# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br>_____<br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br>　　　　　　　　　　　　Plaintiff,<br>v.<br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; *et al.*<br>　　　　　　　　　　　　Defendants. | CASE NO. 08md1988 DMS (LSP)<br>CASE NO. 08cv1968 DMS (LSP)<br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br>**[Docket Nos. 37 (08md1988) and 78 (08cv1968)]** |

This matter comes before the Court on Plaintiff's motion to remand this case to state court. The motion came on for hearing on December 19, 2008. Kathrin Sears appeared on behalf of Plaintiff, Kenneth Heitz appeared and argued on behalf of Defendant Mozilo, and Pamela Davis appeared and argued on behalf of Defendant Sambol. After thoroughly reviewing the parties' briefs and the record on file herein, and after hearing oral argument, the Court grants the motion.

/ / /

/ / /

/ / /

# I.

# BACKGROUND

This case was originally filed in Los Angeles Superior Court on June 25, 2008. Plaintiff is the People of the State of California. Defendants are Countrywide Financial Corporation, Countrywide Home Loans, Inc., Full Spectrum Lending, Inc., Angelo Mozilo and David Sambol. The First Amended Complaint, filed on July 17, 2008, alleges claims for violations of California Business and Professions Code §§ 17200 and 17500. Plaintiff seeks injunctive relief, a $2,500 penalty against each Defendant for each statutory violation, and costs of suit.

On July 24, 2008, Defendants removed the case to the United States District Court for the Central District of California, citing 28 U.S.C. § 1331 and 28 U.S.C. § 1334 as the basis for removal. On August 27, 2008, Plaintiff filed the present motion to remand. The motion was fully briefed in the Central District, and then the case was transferred to this Court pursuant to a decision of the Judicial Panel for Multidistrict Litigation.

Before the case was received in this Court, Plaintiff reached a settlement with the corporate Defendants. Those Defendants have now been dismissed from the case, leaving only the individual Defendants, Mozilo and Sambol.

After being advised of the status of the consolidated cases in this Multidistrict Litigation, the Court set out a briefing schedule and hearing date on the motion to remand. In addition to the original briefs, Defendant Mozilo submitted a supplemental opposition brief, and Plaintiff submitted a supplemental reply.

# II.

# DISCUSSION

As mentioned above, Defendants assert there are two bases for removal jurisdiction in this case: 28 U.S.C. § 1331 and 28 U.S.C. § 1334. Plaintiff disputes that either of these statutes provides a basis for the Court to exercise jurisdiction in this case.

**A.     28 U.S.C. § 1331**

Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Although the First Amended Complaint does not include a claim for violation of any specific federal law, Defendants assert that the Court may properly exercise subject matter jurisdiction over this case pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308 (2005).

In *Grable*, the Internal Revenue Service ("IRS") seized real property belonging to the plaintiff to satisfy a tax delinquency, and then sold that property to the defendant. *Id.* at 310. The plaintiff thereafter brought a quiet title action against the defendant in state court asserting that, although it had received actual notice of the IRS seizure, the IRS did not comply with the strict requirements of the notice statute. *Id.* at 311. The defendant removed the case to federal court, and the district court declined to remand the case because it found the plaintiff's claim "depended on the interpretation of the notice statute in the federal tax law." *Id.* The Court of Appeal affirmed that decision, as did the Supreme Court.

In doing so, the Court explained the rationale behind the "substantial" or "significant" federal question jurisdiction doctrine:

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]

*Id.* at 312. However, the Court also stated these interests were "subject to a possible veto[,]" namely, an analysis of whether the exercise of jurisdiction "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Id.* at 313-14. In other words, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

1. <u>Do Plaintiff's Claims Necessarily Raise a Disputed and Substantial Federal Issue?</u>

As the parties invoking this Court's subject matter jurisdiction, Defendants bear the burden of showing that Plaintiff's claims necessarily raise a disputed and substantial federal issue. Plaintiff

///

argues Defendants cannot meet that burden here because its claims do not raise a federal issue, and even if they did, the federal issues are not necessary to resolve Plaintiff's claims.

To resolve this issue, the Court turns first to a consideration of Plaintiff's claims. As mentioned above, they arise under California Business and Professions Code §§ 17200 and 17500. Section 17200, California's unfair competition law, prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. Section 17500, California's false advertising law, prohibits "'untrue or misleading' statements designed to 'induce the public to enter into any obligation' to purchase various goods and services." *Cruz v. Pacificare Health Systems, Inc.*, 30 Cal. 4th 303, 316 (2003) (quoting Cal. Bus. & Prof. Code § 17500).

The factual bases for Plaintiff's claims are numerous, but they fall generally into two categories: (1) sales and marketing and (2) underwriting. In the first category, Plaintiff alleges Defendants misrepresented or obfuscated the duration of "teaser" interest rates, the risk of negative amortization, the payment rate versus the interest rate, the duration of the minimum payments, the difficulty in refinancing and the prepayment penalties associated with their Pay Option ARM products. Plaintiff also alleges Defendants misrepresented or obfuscated the duration of the fixed interest rate, the nature of the interest rate, *i.e.*, whether it was fixed or adjustable, the amount of payment increases, prepayment penalties and refinance difficulties associated with their Hybrid ARM products. In addition, Plaintiff alleges Defendants did not provide consumers with certain documents associated with their home equity lines of credit, and that Defendants encouraged consumers to draw down the full amount of the credit line upon funding. Plaintiff also takes issue with Defendants' advertising, telemarketing and promotional practices, and their practice of selling "No Income No Asset" and "Stated Income Stated Asset" ("NINA" and "SISA") loans to consumers when they could have obtained a lower interest loan by simply providing documentation. In the second category, Plaintiff alleges Defendants offered no or reduced document programs, such as NINA and SISA, they relaxed their credit score requirements, they underwrote loans based on initial rates rather than long term rates, they pressured underwriters to approve questionable loans, they gave underwriters authority to grant exceptions to underwriting requirements, who then liberally exercised that authority, and they engaged

1 in risk layering. Plaintiff alleges that the entirety of this conduct was aimed at generating as many
2 loans as possible, which Defendants then sold on the secondary mortgage market.

3 Despite the breadth of these factual allegations, Defendants assert "the core allegations . . . are
4 that [Defendants] misrepresented or failed to disclose the terms of its mortgage loans and improperly
5 compensated the mortgage brokers it used to market its loans." (Mem. of P. & A. in Opp'n to Mot.
6 to Remand at 5.) These allegations appear to be part of Plaintiff's claims, but they do not appear to
7 be the "core allegations." Indeed, it is questionable whether there are any "core allegations" in
8 Plaintiff's Complaint. Rather than focusing on "core" facts, Plaintiff appears to be challenging a wide
9 range of policies and procedures implemented by Defendants to generate as many loans as possible
10 for eventual sale on the secondary mortgage market. *See Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.
11 App. 4th 499, 520 (1997) (stating "multiple violations related to a course of conduct, not one isolated
12 incident.") Misrepresentations about loan products, failure to provide the necessary documentation,
13 and broker compensation structures are certainly part of those policies and procedures, but they are
14 not the only allegations in the Complaint. Plaintiff also challenges Defendants' underwriting and
15 advertising practices, either of which could form the basis for liability under state law.

16 Furthermore, Plaintiff's claims do not appear to rely heavily, if it all, on Defendants' written
17 disclosures, which are the subject of TILA. *See* 12 C.F.R. § 226.17(a)(1) ("The creditor shall make
18 the disclosures required by this subpart clearly and conspicuously *in writing*[.]") Rather than focusing
19 on the documentation that was or was not provided to customers "before consummation of the
20 transaction," 12 C.F.R. § 226.17(b), Plaintiff appears to focus on the representations that were made
21 in person, on the telephone, in e-mails, and in advertising materials in an effort to transform potential
22 customers into actual customers, and actual customers into repeat customers. None of this conduct
23 concerns written disclosure of actual loan terms, and thus it is not governed by TILA.

24 Whether RESPA governs any conduct alleged in the Complaint is a closer question. As part
25 of its 17200 claim, Plaintiff alleges Defendants "[paid] compensation to mortgage brokers that was
26 not reasonably related to the value of the brokerage services they performed[.]" (First Am. Compl.
27 at ¶ 169.k.) This allegation mirrors one part of "a two-part test to determine whether a [yield spread
28 premium] is reasonable or unreasonable under Section 8(a) and 8(b) of RESPA." *Geraci v.*

1  *Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). The Department of Housing and Urban
2  Development ("HUD"), which is charged with enforcing RESPA, *Schuetz v. Banc One Mortg. Corp.*,
3  292 F.3d 1004, 1006 (9th Cir. 2002), set of this test in a March 1, 1999 Policy Statement. Under the
4  test, courts are to consider: "(1) 'whether goods or facilities were actually furnished or services were
5  actually performed for the compensation paid' and if so, (2) '*whether the payments are reasonably*
6  *related to the value of the goods or facilities that were actually furnished or services that were*
7  *actually performed.*'" *Geraci*, 347 F.3d at 751 (quoting HUD's Statements of Policy, Lender
8  Payments to Mortgage Brokers, 64 Fed. Reg. 10080 (Dep't of Housing & Urban Dev., March 1,
9  1999)) (emphasis added). Whether by accident or intent, Plaintiff's allegation in this case about
10 broker compensation raises a federal issue, namely whether the compensation paid to Defendants'
11 brokers complied with RESPA.

12  However, that this particular allegation raises a federal issue does not mean Defendants have
13 shown that their case falls into "the slim category *Grable* exemplifies." *Empire Healthchoice Assur.,*
14 *Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). First, Defendants have not shown that resolution of this
15 federal issue is necessary to Plaintiff's 17200 claim. The allegation about the reasonableness of broker
16 compensation is just one of twelve acts or practices alleged in the Complaint, any of which may form
17 the basis for liability under Section 17200. *Cf. Potter v. Hughes*, 546 F.3d 1051, 1065 (9th Cir. 2008)
18 (stating asserted federal issue not "substantial" within context of complaint). Second, Defendants
19 have not shown that the federal issue raised by this particular allegation is substantial. Although
20 RESPA may be relevant to one of Plaintiff's allegations, there is no dispute about its meaning or
21 construction. *See id.* No federal actors or agencies are involved.[1] *See Mikulski v. Centerior Energy*
22 *Corp.*, 501 F.3d 555, 570 (6th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2426 (2008), (stating
23 whether case involved federal agency and agency's compliance with federal statute is factor that
24 effects substantiality of federal interest); *Coleman v. Beazer Homes Corp.*, No. 07cv312, 2008 WL

---

[1] Defendant Mozilo asserts the federal government is involved in this case because it published "a series of disclosure pamphlets for borrowers," one of which is provided to Defendants' customers. (Supp. Opp'n at 4.) However, Plaintiff is not attacking the disclosures set out in those pamphlets, or the conduct of any federal actors or agencies involved in the creation, distribution or interpretation of those pamphlets. Unlike the plaintiff in *Grable*, Plaintiff here is attacking Defendants' marketing, sale and underwriting of its own private products. Under these circumstances, this case does not involve any federal actors or agencies.

- 6 -

1848653, at *4 (W.D.N.C. Apr. 23, 2008) (considering same factor). Furthermore, resolution of the federal issue in this case will not control any other case. *Mikulski*, 501 F.3d at 570 (stating "whether a decision as to the federal question will control numerous other cases" is another factor bearing on substantiality of federal interest). Absent a necessary and substantial federal issue, there is no reason to "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Grable*, 545 U.S. at 312.

      2.      <u>Would Entertainment of Plaintiff's Claims Disturb Any Congressionally Approved Balance of Federal and State Judicial Responsibilities?</u>

Even if Plaintiff's claims necessarily raised a substantial federal issue, Defendants have not shown that exercising jurisdiction over this case would not disturb any congressionally approved balance of federal and state judicial responsibilities. Defendants argue that the existence of a private right of action in TILA and RESPA weighs in favor of this Court's jurisdiction. However, the federal courts do not have exclusive jurisdiction over those claims. *See* 15 U.S.C. § 1640(e); 12 U.S.C. § 2614. Rather, federal and state courts have concurrent jurisdiction to adjudicate TILA and RESPA disputes. The existence of concurrent jurisdiction indicates Congress intended for the balance of judicial responsibility for these claims be shared between state and federal courts. Exercising jurisdiction in this case, where there is no necessary and substantial federal issue, would upset that balance.

**B.    28 U.S.C. § 1334**

The only other basis for removal of this case is 28 U.S.C. § 1334. This statute confers federal district courts with exclusive jurisdiction over bankruptcy cases, and civil proceedings related thereto. *See* 28 U.S.C. § 1334(a), (b). Defendants contend this case is "'related to' one or more cases under the Bankruptcy Code[,]" therefore the case should remain in this Court. Defendants also assert that 28 U.S.C. § 1452(a) does not apply to this case, therefore the case was properly removed. Because the latter argument is dispositive, the Court addresses it first.

Title 28 United States Code § 1452(a) states:

> A party may remove any claim or cause of action in a civil action other than ... a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such

> district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). The Ninth Circuit applies "two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power ...: the 'pecuniary purpose' and the 'public policy' test." *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123-24 (9th Cir.), *cert. denied by PG&E Corp. v. California ex. rel. Lockyer*, 549 U.S. 882 (2006), (citing *Universal Life Church v. United States*, 128 F.3d 1294, 1297 (9th Cir. 1997)). "'Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of safety and welfare.'" *Id.* at 1124-25 (quoting *Universal Life*, 128 F.3d at 1297). If it relates to the former, it is subject to removal, and if it relates to the latter, it is not. *Id.* "'Under the 'public purpose' test, the court determines whether the government seeks to 'effectuate public policy' or to adjudicate 'private rights.'" *Id.* at 1125 (quoting *Lockyer v. Mirant*, 398 F.3d 1098, 1109 (9th Cir. 2005)). If it seeks the former, it is not subject to removal, and if it seeks the latter, it is. *Id.*

In *PG&E*, the State of California and the City and County of San Francisco filed separate complaints against PG&E Corp., alleging that PG&E had illegally transferred billions of ratepayer dollars from its wholly owned subsidiary, Pacific Gas & Electric Company, to itself in violation of California Business and Professions Code § 17200. Before the complaints were filed, Pacific Gas & Electric Company had filed a voluntary petition under Chapter 11 of the Bankruptcy Code. *Id.* As a result, PG&E removed the complaints to bankruptcy court. The bankruptcy court granted the plaintiffs' motions to remand, finding, *inter alia*, that the actions "were exempt from removal under 28 U.S.C. § 1452(a) because they were 'police or regulatory power' actions[.]" *Id.* at 1120. The district court reversed that finding in part, but the Ninth Circuit eventually upheld the bankruptcy court's decision. It found that the cases "comfortably" satisfied the "pecuniary interest" test because they did "not relate primarily to the protection of the government's pecuniary interest in the debtor's property." *Id.* at 1125. It also found that the cases satisfied the "public purpose" test because they were "fundamentally law enforcement actions designed to protect the public." *Id.* at 1126.

///

Although its application to this case is obvious, Defendants argue *PG&E* is "inapplicable because it involved a substantial public interest not present here." (Mem. of P. & A. in Opp'n to Mot. to Remand at 16.) However, there is no requirement that the public interest at issue be "substantial." The government need only be seeking to effectuate a "public policy" of some kind, not one that meets some subjective level of substantiality. In any event, the acts and practices of a business that allegedly effect more than 2 million California residents and their homes is substantial.

Defendants' argument that the "pecuniary interest" test does not apply to the facts of this case is similarly unavailing. Defendants appear to argue that this test does not apply because the government is seeking to vindicate debtors' rights instead of seeking relief against the debtors' estates, but this mischaracterizes the test. The "pecuniary interest" test asks whether the action "seeks to protect the government's pecuniary interest," or "the public safety and welfare[.]" *PG&E*, 433 F.3d at 1124. It does not depend on the government's stance in relation to the debtor. Just as in *PG&E*, the government here "will receive no pecuniary advantage" if its prevails on its claims. *Id.* at 1125. Rather, the government's case is aimed primarily at protecting the public. Under these circumstances, § 1452(a) applies to this case, and renders the case exempts from removal under the bankruptcy statute.

## III.

## CONCLUSION

In light of the above, the Court finds that neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1334 provides a basis for this Court to exercise subject matter jurisdiction in this case. Accordingly, the Court grants Plaintiff's motion to remand. Pursuant to 28 U.S.C. § 1446(c), the Clerk of Court shall provide a certified copy of this order to the clerk of the Los Angeles Superior Court, and thereafter close this case.

DATED: December 23, 2008

HON. DANA M. SABRAW
United States District Judge