# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>                    Plaintiff,<br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; *et al.*<br><br>                    Defendants. | CASE NO. 08md1988 DMS (LSP)<br>CASE NO. 08cv1903 DMS (LSP)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**[Docket Nos. 34 (08md1988) and 63 (08cv1903)]** |

This matter comes before the Court on Plaintiff's motion to remand this case to state court. The motion came on for hearing on December 19, 2008. Veronica Spicer appeared on behalf of Plaintiff and Kenneth Heitz appeared and argued on behalf of Defendant Mozilo. After thoroughly reviewing the parties' briefs and the record on file herein, and after hearing oral argument, the Court grants the motion.

/ / /

/ / /

/ / /

## I.

## BACKGROUND

This case was originally filed in the Circuit Court of Cook County, State of Illinois, County Department, Chancery Division on June 25, 2008. Plaintiff is the People of the State of Illinois. Defendants are Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc., Full Spectrum Lending, Countrywide Home Loans Servicing, LP, and Angelo Mozilo, individually and in his capacity as Chief Executive Officer of Countrywide Financial. The Complaint alleges claims for violations of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Fairness in Lending Act, 815 ILCS 120/1 *et seq.* Plaintiff seeks declaratory and injunctive relief, civil penalties, and costs of suit.

On July 24, 2008, Defendants removed the case to the United States District Court for the Northern District of Illinois, citing 28 U.S.C. § 1331 and 28 U.S.C. § 1334 as the basis for removal. An Amended Notice of Removal added 28 U.S.C. § 1442 as an additional basis for removal. On August 14, 2008, Defendants filed a motion to stay the case in the Northern District of Illinois pending a motion before the Judicial Panel on Multidistrict Litigation ("JPML"). Plaintiff thereafter filed a motion to remand. Both motions were fully briefed, after which the court granted the motion to stay, and denied the motion to remand as moot. Subsequently, the case was transferred to this Court pursuant to a decision by the JPML.

Before the case was received in this Court, Plaintiff reached a settlement with the corporate Defendants. Those Defendants have now been dismissed from the case, leaving only Defendant Mozilo.

After being advised of the status of the consolidated cases in this Multidistrict Litigation, the Court set out a briefing schedule and hearing date on the motion to remand. In addition to the original briefs, Defendant Mozilo submitted a supplemental opposition brief, and Plaintiff submitted a supplemental reply.

/ / /

/ / /

/ / /

## II.

## DISCUSSION

As mentioned above, Defendants asserted three bases for removal jurisdiction in their Amended Notice of Removal. 28 U.S.C. §§ 1331, 1334 and 1442. In his supplemental opposition brief, Defendant Mozilo expresses his belief that "federal jurisdiction is proper because the claims against him present substantial federal issues." (Supp. Opp'n at 1, n.1.) Accordingly, "Mr. Mozilo believes it is not necessary to consider, and he does not express a view on, other grounds for removal that were asserted previously by counsel for the corporate defendants and which applied to those corporate defendants." (*Id.*) In light of these assertions, the Court will focus its analysis on 28 U.S.C. § 1331.

Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Although the Complaint does not include a claim for violation of any specific federal law, Defendant Mozilo asserts that the Court may properly exercise subject matter jurisdiction over this case pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308 (2005).

In *Grable*, the Internal Revenue Service ("IRS") seized real property belonging to the plaintiff to satisfy a tax delinquency, and then sold that property to the defendant. *Id.* at 310. The plaintiff thereafter brought a quiet title action against the defendant in state court asserting that, although it had received actual notice of the IRS seizure, the IRS did not comply with the strict requirements of the notice statute. *Id.* at 311. The defendant removed the case to federal court, and the district court declined to remand the case because it found the plaintiff's claim "depended on the interpretation of the notice statute in the federal tax law." *Id.* The Court of Appeal affirmed that decision, as did the Supreme Court.

In doing so, the Court explained the rationale behind the "substantial" or "significant" federal question jurisdiction doctrine:

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]

*Id.* at 312. However, the Court also stated these interests were "subject to a possible veto[,]" namely, an analysis of whether the exercise of jurisdiction "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331." *Id.* at 313-14. In other words, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

**A.    Do Plaintiff's Claims Necessarily Raise a Disputed and Substantial Federal Issue?**

As the party invoking this Court's subject matter jurisdiction, Defendant bears the burden of showing that Plaintiff's claims necessarily raise a disputed and substantial federal issue. Plaintiff argues Defendant cannot meet that burden here because its claims do not raise a substantial federal issue, and even if they did, the federal issues are not necessary to resolve Plaintiff's claims.

To resolve this issue, the Court turns first to a consideration of Plaintiff's claims. As mentioned above, they arise under Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Fairness in Lending Act, 815 ILCS 120/1 *et seq*. Section 2 of the Consumer Fraud and Deceptive Business Practices Act states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act[,]" approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. The relevant portion of the Fairness in Lending Act states: "No financial institution, in connection with or in contemplation of any loan to any person, may: ... (e) Engage in equity stripping or loan flipping." 815 ILCS 120/3(e).

The factual bases for Plaintiff's claims are lengthy, numerous and detailed. In support of its first claim, Plaintiff attacks (1) Defendant's underwriting practices, including the promotion and use of reduced documentation underwriting guidelines to provide loans to unqualified borrowers; (2) Defendant's practice of inflating borrowers' income on loan applications; (3) Defendant's practice of

- 4 -

originating short-term loans and promoting serial refinancing; (4) Defendant's practice of risk layering; (5) Defendant's marketing, sales and advertising practices; (6) Defendant's practice of originating loans that were more expensive than necessary; (7) Defendant's employee compensation structure; and (8) Defendant's failure to maintain sufficient oversight and supervision of employees' conduct. Plaintiff's second claim is based on Defendant's practice of "refinancing consumers into mortgage loan products that Countrywide knew or should have known were unaffordable and that decreased the borrowers' equity in their homes, with the primary purpose of receiving fees for the refinancing." (Compl. at 80.)

Despite the breadth of these factual allegations, Defendant asserts Plaintiff's claims are limited to issues of "mortgage loan disclosures and broker compensation[.]" (Mem. in Opp'n to Mot. to Remand at 4.) However, these are not the only issues raised by the Complaint. Plaintiff also challenges Defendant's underwriting practices, his loan application and origination practices, his sales, marketing and advertising practices, and oversight of his employees, any of which could form the basis of liability under state law.

Furthermore, Plaintiff's claims do not appear to rely heavily, if it all, on Defendant's written disclosures, which are the subject of TILA. *See* 12 C.F.R. § 226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously *in writing*[.]") Rather than focusing on the documentation that was or was not provided to customers "before consummation of the transaction," 12 C.F.R. § 226.17(b), Plaintiff appears to focus on Defendant's general business practices, including his sales and marketing practices, his loan application and origination process, and his underwriting procedures. None of this conduct concerns written disclosure of actual loan terms, and thus it is not governed by TILA.

RESPA is similarly inapplicable to the allegations in Plaintiff's Complaint. RESPA was enacted:

> to effect certain changes in the settlement process for residential real estate that will result - -
>
> (1) in more effective disclosure to home buyers and sellers of settlement costs;
>
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

>     (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
>     (4) in significant reform and modernization of local recordkeeping of land title information.

12 U.S.C. § 2601(b). None of Plaintiff's allegations implicate these goals. Rather, Plaintiff asserts Defendant's compensation structure "incentivized employees to maximize sales of loans without proper oversight, resulting in the sale of unaffordable and/or unnecessarily expensive loans[,]" and that compensation was structured "in such a way that brokers were incentivized to sell a product that was riskier than necessary - to the exclusion of other products - in order to obtain the maximum yield spread premium possible." (Compl. at 76.) Contrary to Defendant's suggestion, this conduct is not governed by RESPA.

Even if some of the conduct at issue in the Complaint was governed by TILA or RESPA, Defendant has not shown that this case falls into "the slim category *Grable* exemplifies." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). First, Defendant has not shown that resolution of any federal issue is necessary to Plaintiff's claims. As mentioned above, there are numerous factual bases on which Plaintiff's claims rely, any of which may form the basis for liability under state law. *Cf. Potter v. Hughes*, 546 F.3d 1051, 1065 (9th Cir. 2008) (stating asserted federal issue not "substantial" within context of complaint). Second, Defendant has not shown that any federal issue, to the extent one is raised, is substantial. There is no dispute about the meaning or construction of any federal statute. *See id.* No federal actors or agencies are involved.[1] *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2426 (2008), (stating whether case involved federal agency and agency's compliance with federal statute is factor that effects substantiality of federal interest); *Coleman v. Beazer Homes Corp.*, No. 07cv312, 2008 WL 1848653, at *4 (W.D.N.C. Apr. 23, 2008) (considering same factor). Furthermore, resolution of any federal issue in this case, to the extent one is raised, will not control any other case.

---

[1] Defendant asserts the federal government is involved in this case because it published "a series of disclosure pamphlets for borrowers," one of which is provided to Defendant's customers. (Supp. Opp'n at 4.) However, Plaintiff is not attacking the disclosures set out in those pamphlets, or the conduct of any federal actors or agencies involved in the creation, distribution or interpretation of those pamphlets. Unlike the plaintiff in *Grable*, Plaintiff here is attacking Defendant's marketing, sale and underwriting of its own private products. Under these circumstances, this case does not involve any federal actors or agencies.

1 *Mikulski*, 501 F.3d at 570 (stating "whether a decision as to the federal question will control numerous other cases" is another factor bearing on substantiality of federal interest). Absent a necessary and substantial federal issue, there is no reason to "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" *Grable*, 545 U.S. at 312.

**B. Would Entertainment of Plaintiff's Claims Disturb Any Congressionally Approved Balance of Federal and State Judicial Responsibilities?**

Even if Plaintiff's claims necessarily raised a substantial federal issue, Defendant has not shown that exercising jurisdiction over this case would not disturb any congressionally approved balance of federal and state judicial responsibilities. Defendant argues that the existence of a private right of action in TILA and RESPA weighs in favor of this Court's jurisdiction. However, the federal courts do not have exclusive jurisdiction over those claims. *See* 15 U.S.C. § 1640(e); 12 U.S.C. § 2614. Rather, federal and state courts have concurrent jurisdiction to adjudicate TILA and RESPA disputes. The existence of concurrent jurisdiction indicates Congress intended for the balance of judicial responsibility for these claims be shared between state and federal courts. Exercising jurisdiction in this case, where there is no necessary and substantial federal issue, would upset that balance.

### III.

### CONCLUSION

In light of the above, the Court finds that 28 U.S.C. § 1331 does not provide a basis for this Court to exercise subject matter jurisdiction in this case. Accordingly, the Court grants Plaintiff's motion to remand. Pursuant to 28 U.S.C. § 1446(c), the Clerk of Court shall provide a certified copy of this order to the clerk of the Circuit Court of Cook County, State of Illinois, County Department, Chancery Division, and thereafter close this case.

DATED: December 30, 2008

HON. DANA M. SABRAW
United States District Judge