1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   IN RE: COUNTRYWIDE FINANCIAL            CASE NO. 08md1988 DMS (LSP)
     CORP. MORTGAGE MARKETING AND           CASE NO. 09cv0064 DMS (LSP)
12   SALES PRACTICES LITIGATION
                                            **ORDER GRANTING IN PART**
13   ————————————————————                   **AND DENYING IN PART**
                                            **DEFENDANTS' MOTION TO**
     RANDALL D. BUCKLEY, an individual      **DISMISS**
14   man; and JUNE TAYLOR, an individual
     woman, on behalf of themselves and all
15   others similarly situated,
16                          Plaintiffs,
17   v.
18   COUNTRYWIDE HOME LOANS, INC., a
     New York corporation; and
19   COUNTRYWIDE FINANCIAL
     CORPORATION, a Delaware corporation,
20
                             Defendants.
21
22
23          This matter comes before the Court on Defendants' motion to dismiss this Class Action

24   Complaint ("CAC").  After thoroughly reviewing the parties' briefs and the record on file herein, the

25   Court grants in part and denies in part Defendants' motion.

26   / / /

27   / / /

28   / / /

# I.

## BACKGROUND

This case is part of a multi-district litigation involving states, individuals and several business entities involved in mortgage lending across the country.  Plaintiffs filed their CAC in the United States District Court for the Western District of Washington, and their CAC was transferred to this Court pursuant to an order from the Judicial Panel on Multidistrict Litigation.  Before that transfer, Defendants filed the present motion to dismiss.  This Court continued the hearing date on the motion, and issued a briefing schedule.

The named Plaintiffs in this class action case are Randall D. Buckley and June Taylor. Defendants are Countrywide Financial Corp. ("CFC") and Countrywide Home Loans, Inc. ("CHL"). In general, Plaintiffs allege Defendants have engaged in predatory lending and deceptive sales tactics related to mortgage loans, including failing to disclose required information in the required manner and actively concealing and misrepresenting the terms of adjustable rate mortgages ("ARMs"). (CAC at 1.)  The allegations as to the named Plaintiffs are as follows:

Randall D. Buckley

Randall Buckley purchased his home in Newcastle, Washington in 1987.  (*Id.* at 17.)  In January 2006, he refinanced the mortgage through Encore Credit Corporation.  (*Id.*)  That loan was subsequently transferred to Countrywide. (*Id.*) Pursuant to that loan, Mr. Buckley's monthly payment of principal and interest was $3,125.  (*Id.*)

In December 2006, a representative of CHL called Mr. Buckley to congratulate him on qualifying for another loan with Countrywide that would lower his monthly payments by $1,000. (*Id.*) A CHL representative completed Mr. Buckley's loan application over the telephone on December 4, 2006. (*Id.*)

On December 6, 2006, Countrywide provided a truth-in-lending ("TIL") disclosure statement to Mr. Buckley, which set forth monthly payments of $2,243 for the first 24 months.  (*Id.*) Countrywide also provided a good faith estimate ("GFE") to Mr. Buckley, which set forth the same monthly payment "in principal and interest, and total monthly payments of $2,388.61 including

/ / /

1  payments for taxes and insurance." (*Id.*)  Relying on these disclosures, Mr. Buckley decided to

2  proceed with the loan. (*Id.* at 17-18.)

3        Mr. Buckley closed the loan on December 20, 2006. (*Id.* at 18.)  At that time, the terms of his

4  loan had changed dramatically. (*Id.*)  The monthly payment had increased by over $500 and the term

5  of that payment had changed from 24 months to just six months. (*Id.*)  Furthermore, after the first six

6  months, the payment would adjust upwards every six months. (*Id.*)  No Countrywide representative

7  was present or available at the closing, and the escrow representative was unable to answer Mr.

8  Buckley's questions about the change in the loan terms. (*Id.*)

9        <u>June Taylor</u>

10        Ms. Taylor purchased her home in Renton, Washington in January 2005. (*Id.* at 19.)  She

11  obtained a mortgage with the help of Neal Whiteford, a broker at First Northwest Mortgage Corp.

12  (*Id.*)  Mr. Whiteford brokered a first and second mortgage for the purchase of the home. (*Id.*)

13  Thereafter, Countrywide acquired First Northwest Mortgage Corp., and Mr. Whiteford became an

14  employee of Countrywide. (*Id.*)

15        In the summer of 2006, Mr. Whiteford spoke to Ms. Taylor about refinancing her loans. (*Id.*)

16  "He told her that a refinance with Countrywide would be advantageous because it would allow her

17  to get rid of her unwanted second mortgage and would lower her monthly payments." (*Id.*)

18        Plaintiffs allege Countrywide did not provide Ms. Taylor with a TIL disclosure statement or

19  a GFE before she signed final closing documents. (*Id.*)  They also allege that the final closing

20  documents (1) misrepresented that her initial monthly payments would "fully service the mortgage[,]"

21  (*id.* at 20), and (2) failed to disclose the interest rate "in a clear or conspicuous manner." (*Id.*)

22        These allegations serve as the factual basis for Plaintiffs' sole legal claim, which alleges a

23  violation of the Washington Consumer Protection Act ("WCPA" or "CPA"), Wash. Rev. Code §

24  19.86.010 *et seq.*

25                        **II.**

26                **DISCUSSION**

27        Defendants raise three basic arguments in support of their motion to dismiss the CAC.  First,

28  they argue the individual Plaintiffs' claims must be dismissed because the misrepresentations and non-

1  disclosures are not actionable.  Second, they assert the Plaintiffs' claims are preempted.  Third,

2  Defendants contend Defendant CFC must be dismissed from this case because Plaintiffs failed to

3  plead any specific wrongdoing on its part.

4  **A.     Standard of Review**

5          Dismissal pursuant to Rule 12(b)(6) is proper only where there is no cognizable legal theory

6  or an absence of sufficient facts alleged to support a cognizable legal theory.  *Navarro v. Block*, 250

7  F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

8  1988)).  In deciding a 12(b)(6) motion, all material factual allegations of the complaint are accepted

9  as true, as well as all reasonable inferences to be drawn from them.  *Cahill v. Liberty Mut. Ins. Co.*,

10  80 F.3d 336, 338 (9th Cir. 1996).  However, the court need not accept all conclusory allegations as

11  true; rather, it must "examine whether conclusory allegations follow from the description of facts as

12  alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

13  *See also Benson v. Arizona State Bd. of Dental Examiners*, 673 F.2d 272, 275-76 (9th Cir. 1982)

14  (court need not accept conclusory legal assertions); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.

15  1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim

16  under the Civil Rights Act."); *accord Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984) ("All

17  well-pleaded facts, as distinguished from conclusory allegations, must be taken as true.").  A claim

18  "'should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in

19  support of his claim which would entitle him to relief.'"  *Perfect 10, Inc. v. Visa Intern. Service Ass'n*,

20  494 F.3d 788, 794 (9th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2871 (2008), (quoting

21  *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002)).

22  **B.     Preemption**

23          Defendants argue Plaintiffs' claims are preempted by the Truth in Lending Act ("TILA") and

24  the Real Estate Settlement Procedures Act ("RESPA").  Defendants also assert Plaintiff Taylor's claim

25  is preempted by the National Bank Act ("NBA").  The Court addresses these arguments in reverse

26  order.

27  / / /

28  / / /

<u>1.</u>        <u>The NBA</u>

Plaintiff Taylor obtained the loan at issue in this case from Countrywide Bank, N.A.  (*See* Mot. to Dismiss, Ex. A.)  As a result, Defendants argue Taylor's claim is preempted by the NBA.  The NBA regulations provide:

> a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning: ...
>
> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; ...
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents; ... [and]
>
> (12) Rates of interest on loans[.]

12 C.F.R. § 34.4 (a)(4), (9).  Plaintiffs do not dispute that this case challenges the manner in which Defendants disclosed the rates and terms of their loans.  (Pls.' Resp. to Mot. at 21.)  However, they do dispute whether the NBA applies to this case since Countrywide Bank, N.A. is not a party.[1]

In response to this argument, Defendants cite *Krispin v. May Dep't Stores Co.*, 218 F.3d 919 (8th Cir. 2000).  In that case, the plaintiffs brought claims against a department store alleging that late fees associated with the store's credit cards violated state law.  *Id.* at 921.  The store removed the case to federal court on the basis of preemption by the NBA.  *Id.* at 922.  The Eight Circuit affirmed the district court's exercise of jurisdiction even though the bank was not a party to the case.  In doing so, the court stated: "although we recognize that the NBA governs only national banks, in these circumstances we agree with the district court that it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store), in determining whether the NBA applies." *Id.* at 924.

/ / /

---

[1]  Plaintiffs also assert the NBA "does not preempt laws of general application such as the Washington Consumer Protection Act."  (*Id.* at 22.)  However, Plaintiffs fail to cite any binding authority to support this assertion.  Indeed, Ninth Circuit law is to the contrary.  *See Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) ("Regardless of the nature of the state law claim alleged, however, the proper inquiry is whether the 'legal duty that is the predicate of' Plaintiffs' state law claims falls within the preemptive power of the NBA or regulations promulgated thereunder.")  Accordingly, the Court rejects this argument.

1    Plaintiffs assert the claims in this case are distinguishable from those in *Krispin*, therefore

2  *Krispin* does not apply here.  However, the nature of the claims is not a meaningful distinction.  The

3  relevant facts in each case are the same: the plaintiffs brought claims against entities that did not

4  originate the transactions, and the originating entities were national banks.  On these facts, the *Krispin*

5  court looked to the originating entity in determining that the NBA preempted the plaintiffs' claims.

6  That reasoning applies equally to the facts of this case, and leads to the same conclusion: Taylor's

7  claim is preempted by the NBA because the entity that originated her loan, Countrywide Bank, N.A.,

8  is a national bank.  This holding applies even though Countrywide Bank, N.A. is not a party to this

9  case.  Accordingly, Taylor's claim is preempted by the NBA.

10    2.    TILA

11    With Taylor's claim preempted, the only remaining claim belongs to Plaintiff Buckley.

12  Defendants assert his claim is also preempted, but by TILA or RESPA, not the NBA.  Like the NBA,

13  TILA preempts certain state laws, but its preemptive effect is not as great.  Unlike the NBA, TILA

14  preempts only those laws that "are inconsistent with the provisions of this subchapter and then only

15  to the extent of the inconsistency."  15 U.S.C. § 1610(a)(1).  The regulations interpreting TILA

16  provide: "A State law is inconsistent if it requires a creditor to make disclosures or take actions that

17  contradict the requirements of the Federal law."  12 C.F.R. § 226.28(a)(1).

18    Defendants fail to make that showing.  Instead of drawing a comparison between the disclosure

19  requirements under the WCPA and TILA, Defendants point to differences in the statutes of limitations

20  applicable to each law, and the remedies available thereunder.   Yet, neither of these factors renders

21  Buckley's claim inconsistent with TILA.  *See Quezada v. Loan Center of California, Inc.*, No. CIV.

22  08-177 WBS KJM, 2008 WL 5100241, at * 5 (E.D. Cal. Nov. 26, 2008) (finding claim under

23  California's unfair competition law ("UCL") not inconsistent with TILA even though UCL provided

24  for longer statute of limitations and additional remedies).

25    Defendants' reliance on *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008), is

26  also misplaced.  In that case, the court did not decide whether a state law claim was preempted by

27  TILA.  Rather, the federal law at issue in *Silvas* was the Home Owners Loan Act, which carries a

28  greater preemptive effect than TILA.

1    Based on the statutory language of TILA and the regulations promulgated thereunder, this

2    Court finds Buckley's claim is not preempted by TILA. *See Williams v. First Government Mortgage*

3    *and Investors Corp.*, 176 F.3d 497, 499-500 (D.C. Cir. 1999) (holding TILA does not preempt District

4    of Columbia's Consumer Protection Procedures Act).

5         3.    RESPA

6         The same result applies under RESPA. Like TILA, RESPA preempts only those laws that "are

7    inconsistent with any provision of this chapter, and then only to the extent of the inconsistency." 12

8    U.S.C. § 2616. Here, Defendants argue the WCPA is inconsistent with RESPA in that it provides a

9    private right of action for violations of loan disclosure rules whereas RESPA does not. However,

10   Defendants fail to cite any authority to support this argument. They also fail to explain why Buckley's

11   entire claim should be preempted when the alleged RESPA violation is only one aspect of Defendants'

12   alleged predatory lending and deceptive sales tactics. At this stage of the proceedings, the Court

13   declines to find that Buckley's claim is preempted by RESPA.

14   **C.    Misrepresentations and Nondisclosures**

15        Absent preemption, the Court turns to the substance of Buckley's WCPA claim. That claim

16   alleges the final loan terms were inconsistent with Defendants' initial written disclosures, and the date

17   on his Notice of Right to Cancel was inaccurate. Plaintiffs allege this conduct violated TILA, RESPA,

18   Washington's Mortgage Brokers Practices Act ("MBPA"), Washington's Consumer Loan Act

19   ("CLA"), and otherwise constituted unfair or deceptive acts or practices in violation of the WCPA.

20   Defendants argue their initial disclosures did not violate any of the cited statutes and were not

21   otherwise unfair or deceptive. They also assert the date on the Notice of Right to Cancel was correct,

22   as a matter of law.

23        Plaintiffs' opposition to the motion to dismiss is noticeably silent on the issue of the Notice

24   of Right to Cancel. Accordingly, the Court grants Defendants' motion to dismiss that aspect of

25   Plaintiffs' claim.

26        That leaves only the terms of Buckley's loan. Plaintiffs allege "[t]he final terms of the loan

27   were patently inconsistent with the required written disclosures made to Mr. Buckley early in the loan

28   process." (CAC at 18.) Plaintiffs contend this inconsistency was a "bait and switch" tactic, which

- 7 -

violates TILA, RESPA, MBPA, CLA and otherwise constitutes unfair or deceptive conduct. However, "[t]he Truth in Lending Act does not provide a cause of action when a lender engages in 'bait and switch techniques." *Clark v. Troy and Nichols, Inc.*, 864 F.2d 1261, 1264 (5th Cir. 1989). Plaintiffs also fail to provide any authority that "bait and switch" techniques violate RESPA or the CLA.

Nevertheless, "bait and switch" advertising is prohibited by the MBPA. *See* Wash. Rev. Code § 19.146.0201(7). Defendants assert Plaintiffs fail to provide any factual allegations about "how they were part of the alleged bait and switch[,]" (Reply at 7), but the Court disagrees. Plaintiffs allege Buckley received a telephone call from a CHL representative in which the representative "congratulated him on becoming qualified for lower monthly payments by refinancing a loan with Countrywide[,]" and offering "to refinance Mr. Buckley's loan in a manner that would lower his payments by approximately $1,000 per month." (CAC at 17.) Based on those representations, Buckley completed an application for a refinance. (*Id.*) Defendants then provided initial disclosures consistent with those representations, only to offer a final product with much different terms. (*Id.* at 17-18.) These allegations are sufficient to state a violation of the MBPA, which violation "is an unfair or deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of" the CPA. *See* Wash. Rev. Code § 19.146.100. Accordingly, Defendants' motion to dismiss this aspect of Plaintiffs' claim is denied.

**D.     Defendant Countrywide Financial Corporation**

Finally, Defendants move to dismiss CFC from this case. Defendants assert Plaintiffs have failed to allege any facts concerning CFC's connection to the named Plaintiffs or its actionable conduct, either individually or jointly with CHL. However, the Court disagrees. First, Plaintiffs allege multiple theories of liability against CFC: direct, co-conspirator, agent, servant, assignee and/or joint venture. (CAC at 3.) Furthermore, Plaintiffs allege numerous and sufficient facts concerning CFC's participation in the unfair and deceptive practices at issue in this case. Accordingly, Defendants' motion to dismiss CFC is denied.

///

///

1    / / /

2                                        **III.**

3                                  **CONCLUSION**

4          In light of the above, Defendants' motion to dismiss is granted in part and denied in part.

5    Specifically, the Court (1) grants the motion to dismiss Plaintiff Taylor's claim as preempted by the

6    NBA, (2) denies the motion to dismiss Plaintiff Buckley's claim as preempted by TILA or RESPA,

7    (3) grants the motion to dismiss Plaintiff Buckley's claim to the extent it relies on the Notice of Right

8    to Cancel, (4) denies the motion to dismiss the remainder of Plaintiff Buckley's claim, and (5) denies

9    the motion to dismiss Defendant CFC.

10         **IT IS SO ORDERED**.

11   DATED:  March 4, 2009

12                                        _____

13                                        HON. DANA M. SABRAW
                                          United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28