Steve W. Berman (*pro hac vice*)
Ari Y. Brown (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 682-2992

Kim D. Stephens
Nancy Pacharzina
TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

Attorneys for *Buckley* Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Lead Case No. 3:08-md-1988 DMS (WMC) |
| THIS DOCUMENT RELATES TO: | |
| | **CLASS ACTION** |
| RANDALL D. BUCKLEY, an individual man; and JUNE TAYLOR, an individual woman, on behalf of themselves and all others similarly situated, | Case No. 3:09-cv-0064 DMS (WMC) |
| | **PLAINTIFF BUCKLEY'S RESPONSE TO MOTION TO STRIKE PORTIONS OF ARI Y. BROWN'S DECLARATION IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs, | |
| v. | |
| COUNTRYWIDE HOME LOANS, INC., a New York corporation; and COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, | Date: December 11, 2009
Time: 1:30 p.m.
Courtroom: 10
Judge: Hon. Dana M. Sabraw |
| Defendants. | |

1     Countrywide has filed a Motion to Strike two paragraphs of the Declaration of Ari Y.
2 Brown ("Brown Declaration") filed in support of the Motion for Class Certification.  The
3 paragraphs to which Countrywide objects summarize counsel's review of selected documents from
4 the portions of loan files that Countrywide agreed to produce.  Countrywide's objections are
5 without merit and this motion should be denied.

6     Countrywide's objects to Paragraphs 23 and 24 to the Brown Declaration for the following
7 reasons:  (1) it claims that the facts in the declaration regarding the results of the review of loan
8 files were not based on personal knowledge; (2) it objects that counsel fails to authenticate or
9 identify the specific documents or loans at issue; and (3) it objects to the characterization of certain
10 changes in loan terms as being material changes.

11    As an initial matter, Paragraphs 23 and 24 of the Brown Declaration summarized
12 voluminous information as specifically permitted under ER 1006.  *See United States v. Evans*, 572
13 F.2d 455 (5th Cir. 1978) (holding that summary of documents admissible under identical Fed. R.
14 Evid. 1006).   More specifically, Countrywide's objections are not based on substance.  Its
15 objection that facts stated are not based on personal knowledge is based on a linguistic quibble.  To
16 be clear, while Mr. Brown was assisted by other members of his firm in reviewing the loan files
17 produced, he personally reviewed each of the 66 loans the declaration identifies as reflecting
18 material differences between the final terms reflected in the mortgage note and HUD-1 settlement
19 from the terms listed on the earlier Good Faith Estimates and Truth in Lending Disclosures.  *See*
20 Reply Declaration of Ari Brown ("Brown Reply Decl."), ¶ 11.

21    Countrywide's second objection – that the declaration fails to authenticate or identify the
22 specific documents or loans at issue, has already been resolved.  On the evening of October 13,
23 Countrywide's counsel demanded that by noon the following day, Plaintiff provide a chart
24 identifying the 66 loans referenced in paragraph 23 of the declaration, identifying the loan numbers
25 relied upon, and identifying the material changes alleged to have occurred in connection with each
26 loan.  Countrywide's counsel claimed that this was the information needed to test the factual
27 assertions in the Brown Declaration.  *See id*., Ex. 33.  Plaintiff's counsel complied with this
28

REPONSE TO MOTION TO STRIKE               - 1 -                    3:09-cv-0064 DMS (WMC)/
                                                                   3:08-md-1988 DMS (WMC)

010066-11 341580 V1

demand and sent the requested chart the next day. *Id*., Ex. 34. Notwithstanding the fact that all of its demands were met, and Plaintiff provided all the information it claimed it needed to authenticate the documents relied on (all of which were produced by Countrywide), Defendant still objects on the same basis. This objection is simply not well founded and should be denied.

Countrywide's claim that the Brown Declaration offers expert opinion as to what constitutes a material change is simply wrong. The declaration details the following discrepancies in loan files considered to be material: (1) an increase from the interest rate disclosed; (2) a reduction in the amount of time the initial interest rate would be fixed; (3) a yield spread premium that was not disclosed; (4) an increase in the amount of discount points or origination fees the borrower paid; and (5) a monthly payment that only covered interest when disclosures presented the payment as covering principal and interest. Brown Decl., ¶ 23. The declaration further described limiting assumptions counsel employed in determining what changes were not considered material. Specifically, the following discrepancies were not considered: any change in APR of less than 1/8 of one percent; an increase in the points and fees that were due solely to an increase in loan; an increase in the amount paid in points or fees of $100 or less. *Id*., ¶ 24.

None of this constitutes opinion. It is rather a description of the findings based on a review of the loan files – all of which Countrywide can test and verify. The standards employed are derived from the applicable law regarding mortgage disclosure. Each of the types of discrepancies identified regard loan terms that are required to be disclosed under the Washington Mortgage Broker Practices Act and Consumer Loan Act. *See* RCW 19.146.030 (2)(a) (requiring written disclosure of the annual percentage rate, amounts and number of payments, whether a loan contains a variable interest rate and, if so, the circumstances under which the rate can increase); RCW 19.146.030(1) (requiring disclosure of all points and fees that the borrower will be required to pay and itemization of the fees that inure to the benefit of the mortgage broker); *Anderson v. Wells Fargo Home Mortg., Inc*., 259 F. Supp. 2d 1143, 1146 (W.D. Wash. 2003) (holding that a yield spread premium is among the items that must be disclosed on a Good Faith Estimate in advance, not at closing when it would be too late to be of use to the borrower); *see also* Interagency

Guidance on Nontraditional Mortgage Product Risks, 71 C.F.R. § 58609 (Oct. 4, 2006) (identifying material risks posed by failure to disclose whether payment fully covers a borrower's obligation and whether negative amortization can occur) (Brown Reply Decl., Ex. 37).

The limiting factors counsel applied in not considering certain changes to be material were similarly derived from requirements in applicable statutes or regulations.  *See* 12 C.F.R. § 226.22(a)(2) (allowing that the annual percentage rate to be disclosed under TILA shall be considered accurate if it is within 1/8 of 1 percentage point of the rate disclosed); WAC 208-660-130 (3)(b) (allowing that a broker need not provide additional written disclosure if a change is due solely to an increase in loan amount provided that the fees were expressed as a percentage on the disclosures).  In sum, the standards counsel applied in determining which changes are material are derived from legal disclosure requirements and do not constitute opinion and are entirely proper to include in a declaration regarding the summary of a review of thousands of pages.

Finally, both the motion to strike and Countrywide's response miss the mark in their challenges to the review of loan files.  The purpose of this review, and of the summary in the Declaration, was to demonstrate that the proposed class will satisfy the requisite numerosity.  Countrywide has represented that it extended over 80,000 loans in Washington during the class period.  Plaintiff reviewed less than ¼ of 1 percent.  For purposes of certifying the Class, it makes little difference whether counsel's estimates prove inexact, as there are more than enough for the Court to certify a class.  *See, e.g., Westways World Travel, Inc. v. AMR Corp*., 218 F.R.D. 223, 233-34 (C.D. Cal. 2003) (rejecting defendant's argument that plaintiff's estimate of class size was too speculative, and holding that "Plaintiffs may rely on reasonable inferences drawn from the available facts in estimating the size of the class").

Plaintiff's counsel's review showed that 66 of 178 loan files showed that borrowers received different loan terms than the terms disclosed to them on *any* written disclosures provided before closing.  This did not include files that showed different terms on intial disclosures that were corrected with a written disclosure provided *before* closing.[1]  Countrywide challenges this figure

---

[1] Countrywide's claim that Plaintiff's determination of loans in the class did not take "interim" disclosures into account is incorrect.

REPONSE TO MOTION TO STRIKE - 3 - 3:09-cv-0064 DMS (WMC)/
3:08-md-1988 DMS (WMC)

and states that there are but 33 loans with discrepancies between written disclosures and final loan terms. This dispute must await further discovery and analysis of the loan files to be resolved, the difference is immaterial here. *See* Supplemental Declaration of Bryce Ward Ph.D., ¶ 40. Whether the class is comprised of over 30,000 individuals as Plaintiffs' preliminary review suggests or a mere 15,000 that Defendant apparently contends, the class will be more than sufficiently numerous to satisfy the requirements of CR 23(a).

Plaintiff's review as summarized in the Brown Declaration was preliminary and not intended to determine the precise size of the class. Such determination must await full production from Countrywide, including the electronic data that Countrywide has retained for each borrower. Plaintiff's expert has already confirmed his ability to develop a database and automated method to determine which borrowers are included in the class and then to calculate damages for each of them based on information that Countrywide has retained. *See* Declaration of Bryce Ward Ph.D., (Dkt. No. 190-4), ¶¶ 4-7, 10-14.

While the process of ascertaining the class and calculating damages will be mechanical, it will require that Countrywide cooperate with, and not hinder, production of information. Early in this case, Plaintiff recognized that the process of reviewing data to ascertain the size of the class would be a large undertaking. In early March, Plaintiff's counsel suggested that the parties agree to a process whereby Plaintiff would review a limited number of documents from a sample of loan files. *See* Brown Reply Decl., ¶ 14. Plaintiff asked again a few weeks later and detailed a process that would start with basic list of information regarding each loan made in Washington during the class period. From this list, Plaintiff would select 1000 loans in an effort to create a cross-section of the loans Countrywide extended throughout Washington. *Id*., Ex. 36. Defendant claimed that producing documents from 1000 loans was excessive and unnecessary in advance of class certification. Ultimately, the parties had to enlist the help of the Magistrate who ordered that Defendant produce selected documents from 200 loan files. Plaintiff's counsel made clear that the 200 files to be designated were not intended to constitute a scientifically representative sample of loan files. *Id*., ¶ 15.

REPONSE TO MOTION TO STRIKE - 4 - 3:09-cv-0064 DMS (WMC)/
3:08-md-1988 DMS (WMC)

010066-11 341580 V1

1   Countrywide did not begin producing loan files until mid July.  It produced on a "rolling
2  basis" in which it delivered several hundred pages every few weeks.  At the time Plaintiff filed his
3  motion for class certification, Countrywide still had not completed its production.  *Id*., ¶ 16.
4  Countrywide often did not produce documents from loan files together, or even in the same
5  production.  Documents from particular loan files were often scattered and spread over productions
6  made weeks apart.  *See, e.g*., Declaration of Timmothy Riddiough, at 13 n.25 (noting the
7  documents for a particular loan spread over nearly 1000 bates numbers).

8   Plaintiff nonetheless completed a preliminary review that is more than adequate to estimate
9  that the size of the class satisfies the requirements of CR 23(a).  Plaintiff did not seek to do more
10  than that.  Defendant's attempt to strike the testimony regarding the results of that review should be
11  denied.

13  Dated:  December 3, 2009

14  HAGENS BERMAN SOBOL SHAPIRO LLP

16  By   /s/ Steve W. Berman
    Steve W. Berman (*pro hac vice*)
17  Ari Y. Brown (*pro hac vice*)
   1301 Fifth Avenue, Suite 2900
18  Seattle, Washington  98101
   Telephone: (206) 623-7292
19  Facsimile: (206) 623-0594

20  Kim D. Stephens
   Nancy Pacharzina
21  TOUSLEY BRAIN STEPHENS PLLC
   1700 Seventh Avenue, Suite 2200
22  Seattle, WA  98101
   Telephone: (206) 682-5600
23  Facsimile: (206) 682-2992

24  Attorneys for *Buckley* Plaintiffs

REPONSE TO MOTION TO STRIKE     - 5 -     3:09-cv-0064 DMS (WMC)/
3:08-md-1988 DMS (WMC)

010066-11 341580 V1

**CERTIFICATE OF SERVICE**

On December 3, 2009, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

- **Steve W. Berman**
  steve@hbsslaw.com
- **Ari Y. Brown**
  ari@hbsslaw.com
- **Brooks R. Brown**
  bbrown@goodwinprocter.com
- **Michael J. Estok**
  mestok@tousley.com
- **Timothy J. Filer**
  FileT@Foster.com
- **Thomas Hefferon**
  thefferon@goodwinprocter.com
- **Thomas E. Loeser**
  TomL@hbsslaw.com
- **Paul G. McNamara**
  pmcnamara@omm.com
- **Nancy Pacharzina**
  npacharzina@tousley.com
- **Kim D. Stephens**
  kstephens@tousley.com

Executed this 3rd day of December, 2009, in Seattle, Washington.

HAGENS BERMAN SOBOL SHAPIRO LLP


By: /s/ Steve W. Berman
      Steve W. Berman