1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>RANDALL D. BUCKLEY, an individual man; and JUNE TAYLOR, an individual woman, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>COUNTRYWIDE HOME LOANS, INC., a New York corporation; and COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation,<br><br>        Defendants. | CASE NO. 08md1988 DMS (LSP)<br>CASE NO. 09cv0064 DMS (LSP)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[Docket Nos. 190 and 213 (08md1988), 84 and 93 (09cv0064)]** |

This matter comes before the Court on Plaintiff's motion for class certification. Defendants Countrywide Home Loans, Inc. and Countrywide Financial Corporation filed an opposition to the motion, and Plaintiff submitted a reply. The motion came on for hearing on February 11, 2010. Ari Brown appeared and argued on behalf of Plaintiff, and Thomas Hefferon appeared and argued on behalf of Defendants. After hearing argument, the Court requested supplemental briefing, which the parties submitted on March 1, 2010. Thereafter, the Court requested additional argument from

counsel.  An additional telephonic hearing was held on April 1, 2010, at which Mr. Brown and Mr. Hefferon appeared and argued.  Having carefully considered the pleadings and arguments of counsel, the Court now denies the motion.

## I.

## BACKGROUND

This class action case is part of a multi-district litigation concerning individuals and several business entities involved in residential mortgage lending across the country.  This particular case involves mortgage lending in the State of Washington.  The remaining named Plaintiff is Randall D. Buckley.[1]  Defendants are Countrywide Financial Corp. ("CFC") and Countrywide Home Loans, Inc. ("CHL").  In general, Plaintiff alleges Defendants have engaged in predatory lending and deceptive sales tactics related to residential mortgage loans, including failing to disclose required information in the required manner and actively concealing and misrepresenting the terms of their loans. (Consolidated Amended Complaint ("CAC") at 1.)

As to Plaintiff Buckley, the CAC alleges Buckley purchased his home in Newcastle, Washington in 1987. (*Id.* at 17.)  In January 2006, he refinanced the mortgage through Encore Credit Corporation. (*Id.*)  That loan was subsequently transferred to Countrywide. (*Id.*)  Pursuant to that loan, Buckley's monthly payment of principal and interest was $3,125. (*Id.*)

In December 2006, a representative of CHL called Buckley to congratulate him on qualifying for another loan that would lower his monthly payments by $1,000. (*Id.*)  A CHL representative completed Buckley's loan application over the telephone on December 4, 2006. (*Id.*)  On December 6, 2006, CHL provided a truth-in-lending ("TIL") disclosure statement to Buckley, which set forth monthly payments of $2,243 for the first 24 months. (*Id.*)  CHL also provided a good faith estimate ("GFE") to Buckley, which set forth the same monthly payment, and total monthly payments of $2,388.61, including payments for taxes and insurance. (*Id.*)  The GFE also represented that the interest rate on the loan was 5.375%.  Along with the GFE and the TIL disclosure statement, CHL sent Buckley an "Approved Home Buyer Certificate" ("Certificate"). (*See* Decl. of Ari Brown in Supp. of

---

[1] Plaintiff June Taylor's claim was dismissed in its entirety on Defendants' motion to dismiss.

1  / / /

2  Mot. ("Brown Decl."), Ex. 5.)[2]  The Certificate states in bold at the top: "The holder of this certificate

3  is ready to seriously shop for a home and has not only been approved for a Countrywide Home Loan,

4  but has a protected interest rate for up to 30 days." (*Id.* at 24.)  Relying on these documents, Buckley

5  decided to proceed with the loan.  (CAC at 17-18.)

6        Buckley closed the loan on December 20, 2006.  (*Id.* at 18.)  Unbeknownst to him, the terms

7  of his loan at the time of closing were not the same as those included in the initial documents he

8  received.  The monthly payment went up to $2,878.28, and instead of being fixed for 24 months, it

9  was fixed for only six months.  (*Compare* Brown Decl., Ex. 4 *with* Ex. 9.)  Furthermore, despite the

10  language on the Certificate, the interest rate on the loan increased to 5.625%.  (*Compare* Brown Decl.,

11  Ex. 3 *with* Ex. 7.)  Buckley discovered these changes after the loan closed.  (Decl. of Randall Buckley

12  in Supp. of Mot. at ¶ 10.)  Although he was able to make some initial payments on the loan, the

13  interest rate continued to adjust upwards, and he was unable to keep making payments.  (*Id.* at ¶ 11.)

14  He is currently facing foreclosure.  (*Id.*)

15        On August 11, 2008, Plaintiff filed the present action on behalf of himself and all others

16  similarly situated in the United States District Court for the Western District of Washington.  His

17  Complaint alleges one claim for violation of Washington's Consumer Protection Act, Wash. Rev.

18  Code § 19.86.010 *et seq*. ("CPA").  On January 13, 2009, the case was transferred to this Court

19  pursuant to an order from the Judicial Panel on Multidistrict Litigation.

20  **II.**

21  **DISCUSSION**

22        Plaintiff moves to certify a class "consisting of thousands of Washington homeowners that

23  Defendants misled as to the true terms of their mortgage loans." (Mem. of P. & A. in Supp. of Mot.

24  at 1; CAC at ¶ 98.)  Specifically, Plaintiff seeks to certify a class of borrowers that (1) "entered into

25  a residential mortgage transaction or a refinance mortgage, secured by residential property located in

26  Washington State from August 11, 2004, to the present, whose transaction was brokered and/or funded

27  _____

28      [2] Defendants filed a motion to strike certain portions of Ari Brown's Declaration.  Because the Court does not rely on those portions in deciding this motion, Defendants' motion to strike is denied as moot.

by defendants[;]" and in which defendants (2) "failed to provide the required Good Faith Estimate or Truth in Lending Disclosure statement in the time or manner provided by Washington law;" or (3) "provided the borrower with a Truth in Lending Disclosure statement and/or Good Faith Estimate that misrepresented material terms of the loan by understating the interest rate, understating or omitting fees to be paid to defendants or to a third party broker, misrepresenting a longer fixed payment period, or misrepresenting that monthly payments would be sufficient to pay down the principal of the loan." (Mem. of P. & A. in Supp. of Mot. at 14-15.)

The proposed class therefore comprises two groups. Section (2) of the proposed class includes borrowers whose final loans did not match the loan described in the initial GFEs and TIL Disclosures, and who did not receive notice of the final loan terms until closing. As to these borrowers, Plaintiff alleges that while the initial disclosures were accurate, Defendants changed the terms of the loan – *i.e.*, changed the loan product – without providing updated disclosures to the borrower in advance of closing as required by Washington law. (*See* Mem. of P. & A. in Supp. of Mot. at 5 ("Countrywide regularly provided Good Faith Estimates and [Truth in Lending] Disclosures that materially understated the true costs and interest rates of the loans it later substituted and had borrowers sign at closing."))

Section (3) of the proposed class includes borrowers who received initial GFEs and TIL Disclosures that were misleading and inconsistent with subsequent disclosures provided at closing, but whose loan terms were unchanged. As to these borrowers, Plaintiff alleges "Countrywide's initial good faith estimate listed the monthly payment amount as covering 'principal and interest[,]'" (Pl.'s Supp. Br. at 15), when in fact the payment covered only interest and no principal, or only a portion of interest thus causing the loan to negatively amortize.[3] Despite the factual differences between the two groups in Sections (2) and (3), Plaintiff asserts the proposed class is based on a singular conceptual model that centers on inadequate disclosure of the terms of the loans borrowers actually

---

[3] As to Plaintiff June Taylor, whose claims were dismissed on Defendants' Rule 12(b)(6) motion, Plaintiff alleged: "The TIL Disclosure statement plainly set forth that Ms. Taylor would need to pay $568.20 each month during the first year of the loan in order to fully service the mortgage. In actuality, the Amount of Payments listed on the TIL Disclosure statement for the first year, and the first 47 months, represented the minimum payment that Countrywide would accept and did not represent the fully amortized payments required under the loan, thus presuming that the loan would negatively amortize." (CAC at ¶ 91.)

1  received.

2  / / /

3      Plaintiff asserts the proposed class satisfies the requirements of Federal Rule of Civil

4  Procedure 23(a) and 23(b)(3).  Defendants dispute that this class satisfies the typicality and adequacy

5  elements of Rule 23(a) and the requirements of Rule 23(b)(3).

6  **A.    Legal Standard**

7      Federal Rule of Civil Procedure 23(a) states:

8      One or more members of a class may sue or be sued as representative parties on behalf
       of all members only if:

9

10     (1) the class is so numerous that joinder of all members is impracticable;

11     (2) there are questions of law or fact common to the class;

12     (3) the claims or defenses of the representative parties are typical of the claims or
       defenses of the class; and

13     (4) the representative parties will fairly and adequately protect the interest of the class.

14  Fed. R. Civ. P. 23(a).  A showing that these requirements are met, however, does not warrant class

15  certification.  Plaintiff must also show that one of the requirements of Rule 23(b) is met.  Here,

16  Plaintiff relies on Rule 23(b)(3), which requires the court to find:

17     that the questions of law or fact common to class members predominate over any
       questions affecting only individual members, and that a class action is superior to other
18     available methods for fairly and efficiently adjudicating the controversy.  The matters
       pertinent to these findings include:

19
       (A) the class members' interest in individually controlling the prosecution or defense
20     of separate actions;

21     (B) the extent and nature of any litigation concerning the controversy already begun
       by or against class members;

22
       (C) the desirability or undesirability of concentrating the litigation of the claims in the
23     particular forum; and

24     (D) the likely difficulties in managing a class action.

25  Fed. R. Civ. P. 23(b)(3).

26      The party seeking certification must provide facts sufficient to satisfy the requirements of Rule

27  23(a) and (b).  *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308-09 (9th Cir. 1977).  In

28  turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23

- 5 -

have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). If a court is not fully satisfied, certification should be refused. *Id.* It is a well-recognized precept that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Falcon*, 457 U.S. at 160 (citation omitted). However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citation omitted); *see also Nelson v. United States Steel Corp.*, 709 F.2d 675, 679-80 (11th Cir. 1983) (plaintiffs' burden "entails more than the simple assertion of [commonality and typicality] but less than a prima facie showing of liability") (citation omitted). Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. *See* Fed. R. Civ. P. 23 advisory committee notes.

**B.     Rule 23(a)**

    1.     Numerosity

Rule 23(a)(1) requires  the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Plaintiff need not state the exact number of potential class members; nor is a specific minimum number required. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*; *see Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992) (whether the class is so numerous is a fact-specific inquiry; district court is granted wide latitude in making this determination).

Here, Plaintiff argues Defendants originated more than 80,000 mortgage loans in the State of Washington during the class period. Plaintiff reviewed a small sample of those loans to determine how many would fall within the class definition, and from that sample he estimates that the proposed class may include more than 30,000 people. Defendants do not dispute that a class of this size would satisfy the numerosity requirement, and the Court so finds. Accordingly, Plaintiff has satisfied the first requirement of Rule 23(a).

1          2.      Commonality

2          The second element of Rule 23(a) requires that "there are questions of law or fact common to

3   the class." Fed. R. Civ. P. 23(a)(2).  This requirement "focuses on the relationship of common facts

4   and legal issues among class members." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).

5   This rule has been construed permissively.  Indeed, the showing to satisfy commonality is "minimal."

6   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

7          In this case, Plaintiff has made that showing.  Factually, each member of the class received a

8   mortgage loan from Defendants in which either (1) the ultimate loan received was different from the

9   loan stated in the initial disclosures, or (2) the terms initially disclosed were misleading.  Due to

10  Defendants' alleged conduct, each class member suffered the same injury, namely, a lack of

11  information necessary to make an informed decision about the loan prior to closing.  Legally, the class

12  members' claims are the same, that is, whether Defendants' unfair or deceptive conduct violated the

13  CPA.  Plaintiff has satisfied the commonality requirement of Rule 23(a).

14         3.      Typicality

15         The next requirement of Rule 23(a) is typicality.  "Although the 'commonality and typicality

16  requirements of Rule 23(a) tend to merge,' each factor serves a discrete purpose.  Commonality

17  examines the relationship of facts and legal issues common to class members, while typicality focuses

18  on the relationship of facts and issues between the class and its representatives." *Dukes*, 509 F.3d at

19  1184 n.12 (citations omitted).  The rule sets forth a permissive standard: "representative claims are

20  'typical' if they are reasonably co-extensive with those of absent class members; they need not be

21  substantially identical." *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members

22  have the same or similar injury, whether the action is based on conduct which is not unique to the

23  named plaintiffs, and whether other class members have been injured by the same course of conduct."

24  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation

25  marks omitted).

26         Unlike the requirements discussed above, Defendants dispute whether Plaintiff has satisfied

27  this requirement.  Plaintiff asserts his claim is typical of the claims of class members because they

28  were all subjected to the same conduct (Defendants' failure to disclose the terms of the loans actually

provided in advance of closing), and they all suffered the same injury (the deprivation of material information about their loans).  Defendants dispute, among other things, that the conduct surrounding Buckley's loan is typical of the conduct underlying the claims of other members of the proposed class.

Specifically, Defendants argue the circumstances surrounding Buckley's loan are not typical of the entire class because Buckley's initial disclosures were accurate.  Plaintiff attempts to rebut this argument by shifting the focus away from the accuracy of the disclosures to the inconsistencies between the initial disclosures and the loans that were ultimately provided.  The conduct giving rise to the inconsistencies, however, is markedly different for members of section (2) than for members of section (3) of the proposed class.  Although the circumstances of Buckley's loan would by typical of borrowers in section (2), *i.e.*, initial disclosures that accurately reflected the loan terms followed by a different loan being disclosed for the first time at closing, those circumstances are not present for borrowers in section (3).  Rather, section (3) of the proposed class involves borrowers who were provided misleading initial disclosures followed by accurate disclosures at closing.  In contrast to section (2), which involved the substitution and disclosure of a *new loan product* at closing, the loans provided in section (3) remained the same – only the disclosures changed.  In other words, section (2) involves a new loan disclosed for the first time at closing, while section (3) involves the same loan with an intentionally misleading initial disclosure.  Thus, Plaintiff's claim is not typical of the class as a whole, as it is not typical of the borrowers in section (3) of the proposed class.

Plaintiff's claim, however, is typical of borrowers in section (2) of the proposed class, despite Defendants' protestations to the contrary.  Defendants argue the "bait" in Buckley's case came in the form of oral representations made over the telephone whereas other members of the proposed class may have been "baited" by "print media, internet banners, [or] television ads[.]"  (Opp'n to Mot. at 32.)  Plaintiff argues the "bait" in his case was not the oral representations, but the written disclosures he received thereafter.  Buckley's claim is therefore typical of the claims of other members of section (2) because all of the "bait" may be found in standardized, readily available formats.

Defendants also argue Buckley's closing was rushed, he failed to read his loan documents, and he relied solely on the representations of his loan officer.  (*Id.* at 33.)  However, none of these circumstances render Buckley's claim atypical of section (2) claims.  Buckley's claim, like the claims

of other members of section (2), rests on what happened before closing, specifically, Defendants' failure to provide an updated disclosure of the new loan terms in advance of closing.  The amount of time spent at the closing table and whether the borrower actually read documents provided for the first time at closing is irrelevant to that issue.

Finally, Defendants assert they have a unique defense to Buckley's claim, namely that the change in his loan terms was a result of the appraisal.  But Plaintiff does not complain about the reason for the change in his loan terms.  Rather, the gist of Plaintiff's claim is that Defendants failed to disclose those changes in advance of closing as required by Washington law.  Under these circumstances, Plaintiff has shown his claim is typical of other borrowers in section (2) of the proposed class.  Because Plaintiff is typical of these borrowers, the Court addresses the remaining requirements of Rule 23(a) & (b) as to these borrowers.

### 4.   Adequacy of Representation

The final requirement of Rule 23(a) is adequacy.  Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).  In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Both the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class.  *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

Here, Plaintiff asserts there are no conflicts between himself, his counsel and the other class members.  Defendants contend Plaintiff has not satisfied this first requirement, but they fail to identify any conflict between the relevant parties.  Accordingly, the Court finds Plaintiff has met his burden to show the absence of any conflicts of interest.

Turning to the second issue, Plaintiff's counsel asserts Plaintiff understands his duties to the

class and is prepared to fulfill those duties throughout this litigation.  Defendants question Plaintiff's independence from his counsel, and assert that his attorneys are controlling the litigation.  In support of this argument, Defendants rely on Plaintiff's deposition testimony.  However, contrary to Defendants' assertion, at no point did Plaintiff testify that he had "turned over the reins of the case to his attorneys."  (Opp'n to Mot. at 34.)  Rather, Plaintiff testified, as would most clients, that he relied on his attorneys to make decisions about the case and how it will be prosecuted, and that he looked to his attorneys for "answers" on how to do that.  (Opp'n to Mot., Ex. 1 at 61-62, 65-66.)  There is nothing in Plaintiff's testimony that evidences a conflict between him and his attorneys, or that makes him an inadequate class representative.

Finally, Defendants take aim at Plaintiff's counsel, and urge the Court to carefully consider whether they are adequate in light of a 2003 jury verdict finding the law firm liable for legal malpractice and other tort and contract claims.  (Opp'n to Mot. at 35.)  The Court notes that verdict, but finds it does not render Plaintiff's counsel inadequate in this case.  In light of the above discussion, the Court finds Plaintiff has satisfied the requirements of Rule 23(a).

**C.     Rule 23(b)**

The next issue is whether Plaintiff has shown that at least one of the requirements of Rule 23(b) is met.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997).  In this case, Plaintiff asserts he has met the requirements of Rule 23(b)(3).

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022 (internal quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to the other methods available for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3). In adding these requirements to the qualifications for class certification, "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)(advisory committee notes)).

1    A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common

2    issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935,

3    944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir.

4    2001)). Thus, courts must determine whether common issues constitute such a significant aspect of

5    the action that "there is a clear justification for handling the dispute on a representative rather than on

6    an individual basis." 7A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1778 (3d ed.

7    2005). To satisfy the predominance inquiry, it is not enough to establish that common questions of

8    law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement. The predominance inquiry

9    under Rule 23(b) is more rigorous, *Amchem*, 521 U.S. at 624, as it "tests whether proposed classes are

10   sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

11   The parties disagree about whether the elements of Plaintiff's CPA claim may be established

12   on a class-wide basis through proof of common facts. Washington's consumer protection statute is

13   found in Section 19.86.020 of the Washington Revised Code. It states, "Unfair methods of

14   competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are

15   hereby declared unlawful." Wash. Rev. Code § 19.86.020. The elements of a claim under Section

16   19.86.020 are: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that

17   impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and

18   (5) such injury is causally linked to the unfair or deceptive act." *Pierce v. Novastar Mortgage, Inc.*,

19   238 F.R.D. 624, 626 (W.D. Wash. 2006) ("*Pierce II*") (citing *Hangman Ridge Training Stables, Inc.*

20   *v. Safec Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986)).

21   Plaintiff argues he can establish the first three elements of his CPA claim – an unfair or

22   deceptive act or practice occurring in trade or commerce that impacts the public interest – by reference

23   to Defendants' conduct, specifically, Defendants' scheme of providing "written disclosures that stated

24   more favorable loan terms, and then not informing the borrower in advance when those terms

25   changed[.]" (Mem. of P. & A. in Supp. of Mot. at 21.) Defendants do not address whether their

26   conduct satisfies these elements, but rather recast Plaintiff's claim as one based on fraud. (Opp'n to

27   Mot. at 13.) Defendants then argue why the elements of a fraud-based claim are generally

28

1    inappropriate for resolution on a class-wide basis, and why Plaintiff cannot establish those elements

2    on a class-wide basis in this case.

3    ///

4           Defendants correctly observe that a showing of fraud requires:

5           (1) A representation of an existing fact; (2) Its Materiality; (3) Its falsity; (4) The
            speaker's knowledge of its falsity; (5) His intent that it shall be acted upon by the
6           person to whom it is made; (6) Ignorance of its falsity on the part of the person to
            whom the representation is addressed; (7) The latter's reliance on the truth of the
7           representation; (8) His right to rely upon it; and (9) His consequent damage.

8    *Williams v. Joslin*, 65 Wash. 2d 696, 697 (1965).  As Plaintiff explains in his reply brief, however, his

9    claim is not limited to fraud.  Indeed, the CPA does not explicitly prohibit "fraudulent" conduct, but

10   is instead directed at "unfair or deceptive acts or practices[.]"  Wash. Rev. Code § 19.86.020.  Unlike

11   a claim of fraud, which requires a showing of intent to deceive, a claim under the CPA only requires

12   a showing that the defendant's conduct was "unfair or deceptive."  To make that showing, "[a]

13   plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had

14   the *capacity* to deceive a substantial portion of the public."  *Hangman Ridge*, 105 Wash. 2d at 785

15   (original emphasis) (internal quotation marks omitted).  This is consistent with Defendants' approach

16   to discovery in which they refused to provide information on intent on the ground it was irrelevant.

17   Therefore, Defendants' argument that intent must be proven on an individual basis does not defeat a

18   finding of predominance.

19          While Defendants raise other fraud-based arguments, their final argument on the issue of

20   predominance concerns the element of causation.  Defendants argue causation requires a showing of

21   reliance, and reliance raises individual issues that defeat the predominance requirement.  They also

22   argue that in cases like this, which allege unfair acts or deceptive practices under the CPA, the

23   causation inquiry requires consideration of all written and verbal discussions between the lender and

24   the borrower, which also raises individual issues that defeat the predominance requirement.  As to

25   Defendants' latter argument under the CPA, the Court agrees.

26          Until the Washington Supreme Court decided *Hangman Ridge*, a private plaintiff pursuing a

27   claim under the CPA only had to prove three elements: "(1) an unfair or deceptive act or practice; (2)

28   in trade or commerce; (3) which affects the public interest."  105 Wash. 2d at 784.  In *Hangman*

- 12 -

*Ridge*, the court *added* two more elements to a claim under the CPA: "a showing of injury to plaintiff in his or her business or property[,]" and a "causal link ... between the unfair or deceptive act complained of and the injury suffered." *Id.* at 784-85. The court, however, did not address the showing required to prove the newly added fifth element of causation. That discussion was not taken up until the Washington Supreme Court decided *Schnall v. AT&T Wireless Services, Inc.*, 168 Wash. 2d 125 (2010), which was decided after initial briefing and just prior to argument in this case.

*Schnall* started the causation discussion by reiterating that "'proof of causation is an essential element of a CPA action.'" *Id.* at 144. Moreover, the court rejected the notion that causation can be proven by a capacity to deceive: "in the context of private CPA actions where plaintiffs seek damages, *more than a mere capacity to deceive* must be shown to establish 'some causal link between defendant's unfair act and [plaintiff's] injury.'" *Id.* at 145 (emphasis added) (citation omitted). The court further noted that some "quantum of proof [is] necessary to establish the proximate, 'but for' causation required by the CPA ...." *Id.* at 144. The requirement that "but for" causation be established by "some quantum of proof" and by something more than an act's capacity to deceive significantly distinguishes Washington's consumer protection law from other jurisdictions where reliance may be presumed or established by an objective, reasonable person standard.

For instance, in *Yokoyama v. Midland National Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010), the Ninth Circuit reversed a denial of class certification under Hawaii's consumer protection statute, finding that individual issues of reliance did not predominate because the statute allowed a claim for unfair or deceptive acts or practices to be proved through a capacity to deceive. There, plaintiff Gary Yokoyama purchased annuities through an independent broker and later filed a class action claiming that Midland marketed the annuities through deceptive marketing brochures that failed to inform prospective purchasers, particularly senior citizens, of the true risks and unsuitability of Midland's long-term annuities, in violation of Hawaii's Deceptive Practices Act, Haw. Rev. Stat. § 480-2. The court noted that under Hawaii law a deceptive act or practice is one that "'is likely to mislead consumers acting reasonably under the circumstances[.]'" *Id.* at 1092 (quoting *Courbat v. Dahana Ranch, Inc.*, 111 Hawaii 254, 141 P.3d 427, 435 (2006)). The court further noted that "the Hawaii Supreme Court has made it clear that reliance is judged by an 'objective reasonable person

standard[,]'" (quoting *Courbat*, 141 P.3d at 436), and that "'actual deception need not be shown; the capacity to deceive is sufficient.'" *Id.* (quoting *State of Bronster v. U.S. Steel Corp*, 82 Hawaii 32, 919 P.2d 294, 313 (1996)).  Because Hawaii's consumer protection statute uses an objective test, the court in *Yokoyama* concluded that "[t]he jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions [in Midland's brochures] were likely to deceive a reasonable person.  This does not involve an individualized inquiry."  *Id.*

In contrast, *Schnall* observed that "reliance is not a dead letter in [Washington] law."  168 Wash. 2d at 144.  While the court noted that "proof of individual reliance" under the CPA is not required "as a separate element[,]" *id.* at 146, it cautioned that "where knowledge of the truth would defeat a claim of misrepresentation, that alleged misrepresentation [would be] eliminated as the 'but for' cause of the claimant's injury."  *Id.*  The court further observed that "'depending on the deceptive practice at issue and the relationship between the parties, the plaintiff may need to prove reliance to establish causation.'" *Id.* at 144 (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 59 n. 15 (2009)).  Thus, the quantum of proof necessary to establish "but for" causation varies "with the context of the claim."  *Id.* at 145.

Turning to the facts of this case, Plaintiff's theory of liability for borrowers in section (2) of the proposed class is rooted primarily in two provisions of Washington's Mortgage Brokers Practices Act ("MBPA") which require written disclosures in certain circumstances.  *See* Wash. Rev. Code § 19.146.030(3) (requiring broker or loan originator to provide written confirmation of terms of lock-in agreement no less than three business days thereafter);[4] Wash. Rev. Code § 19.146.030(4) (requiring broker to provide written explanation of change in broker fee and reason for fee increase no less than

---

[4]  Section 19.140.030(3) provides: "If subsequent to the written disclosure being provided under this section, a mortgage broker or loan originator enters into a lock-in agreement with a borrower or represents to the borrower that the borrower has entered into a lock-in agreement, then no less than three business days thereafter including Saturdays, the mortgage broker or loan originator shall deliver or send by first-class mail to the borrower a written confirmation of the terms of the lock-in agreement ...."  Wash. Rev. Code § 19.140.030(3).

three business days before closing).[5]  Under this theory, any oral disclosure or discussion between Defendants and their borrowers would be irrelevant because *written* disclosure of such terms in advance of closing would be required.  Although determining whether a violation of these statutes occurred would require examination of each individual borrower's file, Plaintiff argues that examination would be standardized and limited to whether a written disclosure was provided, and if so, when.  Plaintiff argues both of these questions are common to the class and eliminate any individual reliance issues.

The problem with this argument is that it assumes lenders are required to update initial disclosures – or to "redisclose" – in advance of closing whenever a change in any material loan term occurs.  (S*ee* Pl.'s Supp. Br. at 9) ("Redisclosure is *always* required following a change in material terms so as to avoid omitting material information and thus misleading or deceiving a borrower.") (original emphasis).  Section 19.146.030(3), however, does not speak to updating earlier disclosures.  Rather, it simply requires disclosure in one limited circumstance: when the borrower and the broker enter into a lock-in agreement after initial disclosures are provided; and, even in that event, it only requires disclosure of the terms of *the lock-in agreement*.  *See* Wash. Rev. Code § 19.146.030(2)(c) (requiring disclosure of the "cost, terms, duration, and conditions of the lock-in agreement").  The disclosure would not include a summary of all material loan terms that have changed, *e.g.*, points, fees, and loan product type.  Similarly, Section 19.146.030(4) requires disclosure if the broker fee and the total closing costs exceed the fee and costs identified in the initial disclosures.  Even under these circumstances, disclosure of such fees is not absolutely required.  It is simply a prerequisite for the broker to charge the excess fees.  The statute does not address, and the term "broker fee" does not encompass, loan fees, costs or terms generally.  Changes in loan type, interest rate and repayment schedules are simply not addressed by the statute.  These statutes, therefore, do not impose on lenders a general obligation to provide updated disclosures in advance of closing whenever loan terms change.

---

[5]  Section 19.140.030(4) provides: "A mortgage broker shall not charge any fee that inures to the benefit of the mortgage broker if it exceeds the fee disclosed on the written disclosure pursuant to the section, unless (a) the need to charge the fee was not reasonably foreseeable at the time of the written disclosure was provided and (b) the mortgage broker has provided to the borrower, no less than three business days prior to the signing of a loan closing documents, a clear written explanation of the fee and the reason for charging a fee exceeding that which was previously disclosed...." Wash. Rev. Code § 19.140.030(4).

1    Notably, a general rediscolure requirement of the type desired by Plaintiff was established

2    on June 12, 2008, but that date comes well after Plaintiff's loan closed.[6]  *See* Wash. Rev. Code §

3    19.144.020.  Section 19.144.020 requires financial institutions to update initial disclosures within three

4    days of any material change in terms of a mortgage loan or at least three days before closing,

5    whichever is earlier.  The statute provides:

6       In addition to any other requirements under federal or state law, a residential mortgage
        loan may not be made unless *a disclosure summary* of all material terms ... is placed
7       on a separate sheet of paper and has been provided by a financial institution to the
        borrower within three business days following receipt of a loan application.  If any
8       material terms of the residential mortgage loan change before closing, *a new disclosure
        summary* must be provided to the borrower within three days of any such
9       change or at least three days before closing, whichever is earlier.

10   Wash. Rev. Code § 19.144.020(1) (emphasis added).

11   Federal law, which is incorporated by Washington's MBPA and Consumer Loan Act ("CLA"),

12   also has been amended to include rediscolure requirements in certain residential mortgage

13   transactions.  *See, e.g.,* 12 C.F.R. § 226.19 (requiring lenders to provide updated disclosure within

14   three business days before consummation of loan if annual percentage rate materially changes); 12

15   C.F.R. § 226.17 (requiring interim rediscolure of changed terms within three days of receiving

16   information sufficient to establish the changed circumstances and no later than three days before

17   consummation of the loan).  However, to the extent these regulations apply to Plaintiff's loan type,

18   they did not take effect until January 16, 2009, and July 30, 2009, respectively.[7]  Thus, neither the

19   federal regulations nor Section 19.144.020 assists Plaintiff because they did not exist in 2006, when

20   Plaintiff's loan closed.

21   In the absence of a general rediscolure requirement, this case will require the trier of fact to

22   understand the entire mix of information – written and oral – known to each borrower before it can

23   determine whether the borrower relied upon the initial disclosures, and thus, whether Defendants acted

24   unfairly or deceptively under the CPA.  The *Pierce* case is instructive on this point.  *Pierce* involved

25

26       [6]  Plaintiff filed his complaint on August 11, 2008, and alleges the class dates back to August
27   11, 2004.  (CAC at ¶ 98.)  Plaintiff closed his loan on December 20, 2006, and Defendants "ceased
     making mortgage loans in Washington by the end of 2008."  (*See* Defs.' Supp. Br. at 2, n.1.)

28       [7]  According to Plaintiff, the regulations were amended "in response to the crisis precipitated
     by aggressive marketing of subprime mortgages."  (Pl.'s Supp. Br. at 2.)

1     a lender's disclosure of payments made to its borrowers' mortgage brokers.  The court denied the

2     plaintiffs' first motion for class certification, finding that oral disclosures and discussions during the

3     loan application process, and after the initial written disclosures, were necessary for the trier of fact

4     to determine whether borrowers were informed of the payments to brokers.  *See Pierce v. NovaStar*

5     *Mortgage, Inc.*, No. C05-5835 RJB, 2006 WL 2571984, at *10 (W.D. Wash. Sept. 5, 2006) ("*Pierce*

6     *I*").  The plaintiffs thereafter narrowed their claim to assert a violation of the requirement under the

7     Real Estate Settlement and Procedures Act ("RESPA"), incorporated into the MBPA, that payments

8     to brokers be disclosed in writing in the original GFE.  Based on that claim, the court certified the

9     class because the plaintiffs had demonstrated that verbal disclosures were "irrelevant to determining

10     whether a *per se* violation of the CPA" had occurred by the lender's alleged failure to disclose

11     payments to brokers in the original GFE.  *Pierce II*, 238 F.R.D. at 629.

12         Here, if a redisclosure requirement does not exist, there can be no *per se* violation of the

13     MBPA, and by extension, the CPA, for Defendants' failure to provide updated disclosures before

14     closing.  Rather, the case looks more like *Pierce I*, which relied on a theory that the lender's practices

15     were generally unfair or deceptive because it failed to inform borrowers – verbally or in writing – of

16     payments to brokers.  Under that theory, oral discussions and disclosures between Defendants and

17     their borrowers following the TIL Disclosures and GFEs would be relevant to the jury's determination

18     of whether borrowers were informed of changes in loan terms or whether they relied on the initial

19     disclosures.

20         Plaintiff's claim – with or without a redisclosure requirement – rests upon an omission theory.

21     In other words, Plaintiff asserts the loans ultimately provided to borrowers differed materially from

22     the loans initially disclosed, and Defendants *failed to provide any notice* of the change in loan terms

23     in advance of closing.  While *Schnall* stated that "proving the lack of information was the common

24     cause of each plaintiff's [injury] could be more generalized[,]" 168 Wash. 2d at 147, the information

25     provided (or lack thereof) will vary in this case from borrower to borrower.  Unlike *Yokoyama*,

26     Plaintiff's claim is not premised on a common omission in a standard marketing brochure (nor can it

27     be premised, as discussed, on a general obligation to provide updated written disclosures in advance

28     of closing).  That being the case, Plaintiff's omission theory necessarily involves an exploration of all

1    disclosures made – written and oral – in each loan transaction.  Defendants proffer they will establish

2    at trial that "in addition to receiving written disclosure of any changes at closing, before the borrower

3    accepted the loan terms, (1) many borrowers were aware of the changes because they requested them,

4    (2) most, if not all, borrowers were orally informed of the changes well before closing, and (3) some

5    borrowers did receive written redisclosure of the loan terms, either from CHL or the borrower's third-

6    party loan broker."  (Defs.' Supp. Br. at 18.)  Even though more generalized proof may be used to

7    establish causation under the CPA, Defendants have shown that each claimant may be fairly called

8    upon to test whether he or she had knowledge of the change in loan terms.  This is necessarily an

9    individual inquiry, and one not based on a common omission in a standard document, as in *Yokoyama*.

10   Because reliance under the CPA may not be presumed or established by an objective, reasonable

11   person standard, the Court is persuaded that under these circumstances individualized issues will

12   predominate over common issues.  Plaintiff has therefore failed to satisfy the predominance

13   requirement of Rule 23(b)(3).[8]  Because this issue is dispositive, the Court declines to address the

14   superiority factors under Rule 23(b)(3)(A)-(D).

15                                          **IV.**

16                                      **CONCLUSION**

17          For these reasons, Plaintiff's motion for class certification is denied.  With this ruling, the

18   Court reimposes the expert report deadlines that were vacated in the Court's April 16, 2010 Order.

19          **IT IS SO ORDERED.**

20   DATED:  April 23, 2010

21                                          _____

22                                          HON. DANA M. SABRAW
                                            United States District Judge

23

24   _____

25          [8]  Even if Plaintiff were able to establish typicality under Rule 23(a)(3) as to borrowers within
     section (3) of the proposed class, the Court would find that individual issues predominate.  Liability

26   as to these borrowers rests upon a theory of affirmative misrepresentation as opposed to omission, *i.e.*,
     that Defendants' initial TIL Disclosures and GFEs misrepresented the actual terms of the loan.  Under

27   such circumstances, Defendants would be entitled to introduce all discussions they had with
     borrowers.  *Schnall*, 168 Wash.2d at 147 (proving reliance "on an affirmative misrepresentation is

28   necessarily individualized[.]")  Plaintiff concedes as much: "Arguably, proof of individual reliance
     may be required to show that this material misrepresentation caused the injury."  (Pl.'s Supp. Br. at
     15.)

                                            - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28