1  WHATLEY DRAKE & KALLAS, LLC
   Joe R. Whatley, Jr. (*pro hac vice*)
2  jwhatley@wdklaw.com
   Edith M. Kallas (*pro hac vice*)
3  ekallas@wdklaw.com
   Ilze C. Thielmann (*pro hac vice*)
4  ithielmann@wdklaw.com
   1540 Broadway, 37th Floor
5  New York, NY 10036
   Tel: (212) 447-7070 / Fax: (212) 447-7077
6
   KESSLER TOPAZ
7  MELTZER & CHECK, LLP
   Joseph H. Meltzer (*pro hac vice*)
8  jmeltzer@ktmc.com
   Edward W. Ciolko (*pro hac vice*)
9  eciolko@ktmc.com
   Donna Siegel Moffa (*pro hac vice*)
10 dmoffa@ktmc.com
   Amanda Trask (*pro hac vice*)
11 atrask@ktmc.com
   Joseph A. Weeden (*pro hac vice*)
12 jweeden@ktmc.com
   280 King of Prussia Road
13 Radnor, PA 19087
   Tel: (610) 667-7706 / Fax: (610) 667-7056
14
   *Co-Lead Interim Class Counsel*
15 [Additional counsel appear on signature page]

**REDACTED**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Lead Case No. 3:08-md-01988-DMS-WMC<br>MDL No. 1988<br><br>CLASS ACTION |
| THIS DOCUMENT RELATES TO:<br><br>*White v. Countrywide Financial Corp.*, No. 08-cv-1972-DMS-LSP;<br><br>*Leyvas et al. v. Bank of America Corp., et al.*, No. 08-cv-1888-DMS-LSP;<br><br>*Jackson v. Countrywide Financial Corp., et al.*, No. 08-cv-1957-DMS-LSP. | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        July 15, 2011<br>Time:       1:30 p.m.<br>Courtroom: 10<br>Judge:     Hon. Dana M. Sabraw<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. A SUMMARY OF COUNTRYWIDE'S CALFIORNIA CONNECTIONS ...................... 2

III. THE STANDARD ON A SUMMARY ADJUDICATION MOTION .............................. 6

IV. THIS COURT MAY APPLY CALIFORNIA LAW TO NON-CALIFORNIA CLASS MEMBERS, INCLUDING THE SIZEMORES, CONSISTENT WITH CALIFORNIA'S CHOICE OF LAW PRINCIPLES ......................................................... 7

    A.  THIS COURT MAY APPLY CALIFORNIA LAW TO CLAIMS OF NON-RESIDENT CLASS MEMBERS AS COUNTRYWIDE DOES NOT SHOW MATERIAL CONFLICTS IN THE RELEVANT LAWS ........................ 7

        1.  This Court May Constitutionally Apply California Law to the Claims of Non-Resident Class Members Due To the Aggregation of Contacts Between Their Claims and California ................................................................................................. 8

        2.  There is a Presumption California Law Applied to All Class Members Absent a Showing to the Contrary .............................................. 9

    B.  EVEN IF THE COURT DECIDES TO ENGAGE IN A FULL CONFLICTS ANALYSIS, CALIFORNIA LAW WOULD STILL PROPERLY BE APPLIED TO THE SIZEMORES AND OTHER NON-RESIDENTS ............................................................................................. 13

V.  THIS MOTION SHOULD BE DENIED OR CONTINUED TO PERMIT DISCOVERY ON THE ISSUES RAISED BY COUNTRYWIDE IN THE MOTION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page

### FEDERAL

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) .............................. 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 6

*Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ....................... 12

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992) ...................................... 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 8

*In re Activision Sec. Litig.*, 621 F.Supp. 415 (N.D. Cal. 1985) ...................................... 10

*In re HitachiTV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135 (S.D. Cal. 2011) ..... 14

*In re Intel Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS 132655 (N.D. Cal. 2010) ...... 11

*In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986) ..................... 11, 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 ..................... 6, 7

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ........................... 11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .......................................... 7, 8, 11

*Shady Gove Ortopaedic Assoc. v. Allstate Ins. Co.*, __ U.S. __, 131 S.Ct. 1431 (2010) ....... 8

*Speyer v. Avis Rent-a-Car*, 415 F.Supp.2d 1090 (S.D. Cal. 2005) ............................... 14

*Sullivan v. Oracle Corp.*, 547 F.3d 1177 (9th Cir. 2008) ............................................. 14

*UCAN v. Sprint*, 259 F.R.D. 484 (S.D. Cal. 2008) ...................................................... 14

*Wolph v. Acer Amer. Corp.*, 272 F.R.D. 477, 2011 U.S. Dist. LEXIS 35003 (N.D. Cal. 2011) ... 11

*Zinser v. Accuflex Research*, 253 F.3d 1180 (9th Cir. 2002) ....................................... 10

### STATE CASES

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (1987) .............................. 1, 9, 13

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000) ........................ 8

*Diamond Multimedia Systems, Inc. v. Sup. Ct.*, 19 Cal.4th 1036 (1999) ............. 10, 11, 13

*Hurtado v. Superior Court*, 11 Cal.3d 574 (1974) ....................................................... 13

PLAINTIFFS' P&AS IN OPPOSITION TO MOTION   - ii -   Lead Case No. 3:08-md-01988-DMS-WMC
FOR SUMMARY ADJUDICATION

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006) ............................................................. 7

*Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496 (2003) ............................................................. 8

*North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1 (1916) ............................................................. 10

*Norwest Mortgage v. Sup. Ct.*, 72 Cal.App.4th 214 (1999) ...................................................... 12, 13, 14

*Washington Mut. Bank, F.A. v. Superior Court*, 24 Cal.4th 906 (2001) ........................................ 10

*Wershba v. Apple Computr, Inc.*, 91 Cal.App.4th 224 (2001) ........................................ 1, 8, 9, 11, 13

**FEDERAL STATUTES AND RULES**

Federal Rules of Civil Procedure

    Rule 56(d) ............................................................................................................................ 15

**STATE STATUTES**

California Business & Professions Code

    Section 17200 ........................................................................................................................ 7
    Section 17500 ...................................................................................................................... 13

**SECONDARY SOURCES**

South Carolina Unfair Trade Practices Act

    Stat. 39-5-10, *et seq.* ............................................................................................................. 7

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Contrary to its assertions, Countrywide's[1] policies, procedures and actions were developed in and emanated from California and applied uniformly across the United States. Countrywide ran its nationwide business from California and exerted control, from California, over all of its loan production divisions and its network of wholesale and retail loan originators, developing and utilizing a centralized set of policies and procedures, marketing strategies and practices, and training materials, causing injuries to California residents and non-residents alike.

Countrywide's substantial, continuing California contacts and connections, combined with the fact the "injury producing conduct" (*i.e.*, the abandonment of meaningful underwriting standards that would ensure the affordability of the Subprime Loans[2] Countrywide originated, the concealment of that abandonment behind a loan origination process that mimicked traditional underwriting procedures, the use of marketing and promotional materials that exploited known consumer vulnerabilities and compensation structures that incentivized the indiscriminate production of Subprime Loans) originated in California, justifies the application of California law to the claims of all class members. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 612-613 (1987); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 242 (2001). While Countrywide emphasizes the Sizemores' and their loan officer's residence, it ignores that the origination and implementation of Countrywide's scheme, as well as the mechanics of its operation, occurred in California. As the "core decisions" regarding Countrywide's scheme were originally made in, and implemented from, California and the effects thereof "emanated" from California throughout the United States, Defendants cannot satisfy their high burden to prevail on this motion. Countrywide's Motion For Partial Summary Judgment must therefore be denied.

---

[1] For purposes of this motion, "Countrywide" or "Defendants" means Bank of America Corporation; Countrywide Financial Corporation; Countrywide Home Loans, Inc.; Countrywide Bank, FSB; Full Spectrum Lending (a division of Countrywide Home Loans, Inc., erroneously named as Full Spectrum Lending, Inc.); Countrywide Bank, N.A. (nka Countrywide Bank, FSB); Countrywide Tax Services Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and LandSafe Flood Determination, Inc., except where otherwise indicated.

[2] "Subprime Loans" as used herein includes Pay Option ARM loans and is consistent with the term as used in Plaintiffs' Memorandum of Law In Support of Class Certification, as set forth in footnote 3 thereof.

## II. A SUMMARY OF COUNTRYWIDE'S CALIFORNIA CONNECTIONS

Countrywide Financial Corporation ("CFC") produced the Subprime Loans at issue in this lawsuit through three production divisions of Countrywide Home Loans -- the Consumer Markets Division (CMD), the Wholesale Lending Division (WLD) and Full Spectrum Lending (FSL). *See* Plaintiffs' Response to Defendants' Separate Statement of Undisputed Material Facts in support of their Motion for Partial Summary Judgment and Plaintiffs' Counterstatement of Facts in Opposition to Defendants' Motion for Partial Summary Judgment ("Counterstatement")[3] ¶¶ 2, 3. The headquarters and primary executive and administrative, legal, marketing, and accounting offices were all in and around Calabasas, California. *Id.* ¶¶ 1, 8, 15, 17, 18. Countrywide Home Loans, whose CMD, WLD and FSL divisions originated the Subprime Loan at issue, also had its headquarters and principal place of business in California. *Id.* ¶ 8. The production manager for all of CHL's production divisions was located in California. *Id.* ¶ 4. And, while CMD maintained offices in other locations, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 11, 13[4]. Antony Mozilo, CFC's CEO during the class period, and the mastermind behind its drive to gain market dominance that underlies the scheme at issue, operated in Countrywide's corporate headquarters in Calabasas. *Id.* ¶ 5.

In fact, CFC and its officers and executives, all of whom were located in California, played an active and significant role in the conduct that furthered the scheme at issue in this lawsuit and impacted the origination of every Class Member's loan. For example, the loosening of underwriting standards and expansion of exceptions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ used throughout Countrywide to achieve the objective of originating more Subprime loans, ▮▮▮▮▮▮▮▮▮

---

[3] Unless specifically identified as a "Response" paragraph, all references herein to the "Counterstatement" refer to paragraphs under the heading "Plaintiffs' Counterstatement of Material Facts", which begins at page 5 of the submission. The entirety of this Counterstatement and the factual averments therein are incorporated by reference into this brief.

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  Sambol. *Id.* ¶ 7. ▮
2  ▮
3  ▮ John McMurray. *Id.* ¶ 14. ▮
4  ▮ *Id.* ¶ 12. And, the
5  ▮
6  ▮ *Id.* ¶ 13. The challenged
7  corporate underwriting practices, designed and implemented in all of CHL as well as in
8  Countrywide Bank, which focused not on traditional considerations of a borrower's capacity to
9  pay but instead on what was "saleable in the secondary market" so that the ▮
10 ▮
11 ▮. *Id.* ¶ 13; Ex. G to the Declaration of
12 Amanda R. Trask ("ART Dec.").[5]
13     Another underwriting policy imposed by CHL on all of its production divisions
14 throughout the nation was the requirement ▮
15 ▮
16 ▮ Counterstatement ¶ 26. This was a "seamless" process from the prospective of the loan
17 officer (*Id.*), pursuant to which ▮
18 ▮ In fact, the ▮ *Id.*
19 ¶ 25 . Countrywide Bank was not located in South Carolina but instead had its headquarters and
20 principal place of business in California.*Id.* ¶ 8. ▮
21 ▮
22 ▮
23 ▮ Counterstatement ¶ 26.[6] An
24 entire ▮ to decide how ▮

---

[5] ▮ Counterstatement ¶ 12 and documents cited therein.
[6] One e-mail produced in discovery suggests that ▮ *See id.* ¶ 26.

1  █████████████████████████████████████████████████████████████
2  ██████████ *Id.* ¶ 30.
3       Creation of the Pay Option ARM and other loan products,██████
4  ████████████████████████████████████████████ *Id.* ¶¶ 21-24. Thus,
5  upper level managers located in Califo███████████████████████████
6  ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████
11 ██████ *Id.* ¶ 22. █████████████████████████████████████████████
12 █████████████████████████████████████████ *Id.* ¶ 21. According to
13 Countrywide's 30(b)(6) witness, ████████████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████
16 ████████ 68:10-13, and promotional pieces ██████████████████████
17 ████████████████████████████████████ *Id.* ¶ 21. These are the materials that would
18 have been utilized by the branches █████████████████[7]
19        Countrywide's ██████████████████████████████████████████
20 █████████████████████████████████████████████████████████ *Id.* ¶
21 23[8]. CFC executives in California, ████████████████████████████
22 involved in the development ████████████████████████████████████
23 ████████████████████ *Id.* ¶ 24. A September 13, 2006 ███████████
24 ████████████████████████████████████████████████████████████████

---

[7] Whether and to what extent ████████████████nd others in her region█████████ developed by CMD's national sales and marketing department is unknown and was not the subject of the class focused discovery conducted to date. See ART Dec. at ¶ 11.

[8] The Legal Department, along with the Office of the President, ███████████████████ ████████████████████ ¶ 14.

1
2
3
4

5   CHL's compensation structure for both the WLD and CMD production channels' loan
6   originators and their managers, which Plaintiffs have alleged is another important component of
7   the challenged scheme because it incentivized the production of the loans at issue without regard
8   whether the loan was affordable or appropriate, was established with
9   *Id.* ¶ 16. Countrywide maintained data processing and storage, as well as
10  loan servicing data, at facilities located in California. ART Dec., Exs. A-D. Loan
11  correspondence and payments, part of the wire fraud scheme, were to be sent to California.
12  Counterstatement, Response ¶ 9.
13  As to the Sizemores,
14  *Id.* ¶ 9. The Sizemores'
15  experience is consistent with that of other borrowers placed in unaffordable and
16  inappropriately costly loans as a result of Defendants' larger, systematic scheme to steer
17  borrowers into the loans that were the most lucrative to Countrywide on the secondary
18  market. Contrary to Countrywide's suggestion, this scheme encompasses Countrywide's
19  entire lending process. From beginning to end, that scheme originates and emanates from
20  California, and was approved by Countrywide corporate management in California.
21  Based on these substantial California connections, Countrywide, in seeking
22  centralization of all related actions in this MDL proceeding in California, represented to the
23  Judicial Panel on Multi-District Litigation in July 2008: "Here, however, there is a clear
24  center of gravity in the Central District of California….Countrywide's principal place of
25  business is located in that District. And the Complaints before the Panel, unlike those in the
26  proceeding that resulted in the Lending Discrimination MDL, largely focus on allegations of
27  decisions made centrally by the defendants on sales and marketing practices, not on data,
28  *and so these complaints put at issue witnesses and documents that are likely to be found in*

1  *the Central District of California.*" ART Dec., Ex. I(Defendants' Reply Memorandum in
2  Support of Transfer Motion, at 17)(emphasis added).[9]  *See also* Counterstatement ¶ 15.
3  Countrywide cannot properly disavow these California contacts.

### III. THE STANDARD ON A SUMMARY ADJUDICATION MOTION

Countrywide bears the initial responsibility to demonstrate there is an absence of genuine issues of material fact relevant to its assertion California law cannot apply to non-residents despite its extensive California contacts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Countrywide has failed to carry its initial burden on this key point. Instead, it misstates the existing record, misrepresents what Plaintiffs have testified to, and ignores extensive contrary testimonial and documentary evidence. As Countrywide fails to meet its initial burden on this Motion, Plaintiffs need not submit additional evidence establishing the existence of genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (only where the moving party meets initial burden must the non-moving party set forth facts showing there is a genuine issue for trial); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (plaintiffs' need to submit evidence arises only *after* the moving party makes required showing).

However, the materials on file, along with the evidence submitted with Plaintiffs' supporting declarations, make clear genuine issues remain as to numerous material facts, precluding summary adjudication. "A district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The Court's inquiry is limited to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. If the evidence is one-sided, it is in *Plaintiffs'* favor based on the extensive evidence of Countrywide's California contacts, especially considering that "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita*

---

[9] Countrywide also focused on the fact ▮▮▮▮▮▮▮▮ Wilson in the Central District. Countrywide cannot dispute that, in four years of litigation, it never raised before either Judge Wilson or this Court that California law did not apply.

PLAINTIFFS' P&AS IN OPPOSITION TO MOTION     - 6 -     Lead Case No. 3:08-md-01988-DMS-WMC
FOR SUMMARY ADJUDICATION

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### IV. THIS COURT MAY APPLY CALIFORNIA LAW TO NON-CALIFORNIA CLASS MEMBERS, INCLUDING THE SIZEMORES, CONSISTENT WITH CALIFORNIA'S CHOICE OF LAW PRINCIPLES

Based on Countrywide's significant California contacts relevant to the claims at issue, California's choice of law principles direct that California law can be applied to the claims of all Class Members in determining Countrywide's liability for the illegal conduct at issue.

#### A. THIS COURT MAY APPLY CALIFORNIA LAW TO CLAIMS OF NON-RESIDENT CLASS MEMBERS AS COUNTRYWIDE DOES NOT SHOW MATERIAL CONFLICTS IN THE RELEVANT LAWS.

In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22 (1985), the Supreme Court held that, under due process principles, to apply one state's law to the claims of nonresident class members, the forum state must have a "'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [forum] law is not arbitrary or unfair." The Court also held:

> We must first determine whether Kansas law conflicts in any *material* way with any other law which could apply. *There can be* no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit. [Emphasis added.]

*Id.* at 816. If one state has legal provisions that would apply to the pertinent situation and another state does not, then the applicable law in each state is materially different. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 122-23 (2006). Therefore, the Court must first consider whether there is any *material* conflict between the relevant laws, which for purposes of this Motion are the UCL and the South Carolina Unfair Trade Practices Act ("SCUTPA"), So. Car. Stat. 39-5-10 *et seq*. The SCUPTA defines a violation as follows:

> "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful; (b) It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

This language is very similar to that of the UCL, Bus. & Prof. Code §17200 ("unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice

PLAINTIFFS' P&AS IN OPPOSITION TO MOTION
FOR SUMMARY ADJUDICATION    - 7 -    Lead Case No. 3:08-md-01988-DMS-WMC

and unfair, deceptive, untrue or misleading advertising"). The UCL is also similarly guided in its interpretation by the FTC Act. *Lavie v. Proctor & Gamble Co.* 105 Cal.App.4th 496, 505 (2003). Since there is no intent requirement under California law (*see Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 181 (2000)), application of South Carolina law would not create a different result. Nor does Countrywide argue it would, despite its burden to do so.[10]

While Plaintiffs' analysis focuses on the claims of the Sizemores since that is the focus of Defendants' motion, the same analysis applies equally to any Class Member located outside of California. As the Ninth Circuit held in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998), "although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification.... Thus, the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *See also Wershba, supra*, 91 Cal.App.4th at 244 (reiterating holding of *Hanlon* in applying California law to all class members against California-based corporation). Indeed, Countrywide does not cite a single decision involving a California-based company with its principal offices and core decision-makers here, and where the misrepresentations were created and emanated from here, in which California law was not applied to out of state class members.

Since Countrywide fails to establish that there are significant material differences between the UCL and the SCUTPA (or any other comparable law), such that the Sizemores or other non-resident Class Members would be able to obtain relief under the UCL and not under other statutes, this should be the end of the Court's inquiry, and the Motion must be denied.

   1.   **This Court May Constitutionally Apply California Law to the Claims of Non-Resident Class Members Due To the Aggregation of Contacts Between Their Claims and California.**

Even if the Court decides to take the next step in the conflicts analysis, under *Shutts* as applied in California, the UCL may be applied to the claims of out-of-state class members. In

---

[10] While the South Carolina state law has a limitation on bringing representative actions, the Supreme Court has held such a limitation does not apply in federal court. *Shady Grove Ortopaedic Assoc. v. Allstate Ins. Co.*, ___U.S.___, 131 S.Ct. 1431, 1443 (2010).

*Clothesrigger, Inc., supra,* the following contacts constituted a sufficient aggregation of contacts under *Shutts* to permit application of California law to the claims of non-resident class members:

> [1] defendants do business in California, [2] defendant Southern Pacific Corporation's principal offices are in California, [3] a significant number of Sprint subscribers are California residents, and [4] defendant GTE Sprint Communications Corporation's employees and agents who prepare advertising and promotional literature for the Sprint service are located in California and thus the alleged fraudulent misrepresentations forming the basis of the claim of every Sprint subscriber nationwide emanated from California.

191 Cal.App.3d at 612-13. Similarly in *Wershba*, 91 Cal.App.4th at 242-44, the Court held that "a California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a California corporation *and some or all of the challenged conduct emanates from California*." (emphasis added).

As detailed in the documents submitted with the Declarations as summarized above, as well as submitted to the Court in connection with Plaintiffs' motion for class certification, Countrywide cannot dispute: (1) it does business in California; (2) its principal offices are in California; (3) a significant number of Class members are from California; and (4) Countrywide's employees and agents who prepared marketing materials, advertising, form documents and literature are in California, such that the injury producing conduct emanated from California. In addition, the development and implementation of Defendants' scheme, policies and practices of pushing inappropriate Subprime Loans on borrowers irrespective of their appropriateness or affordability took place in California, and the abandonment of reasonable and traditional underwriting practices was based on corporate decisions made in California. Countrywide does not and cannot dispute the core decisions at issue here were made in California. In fact, Countrywide asserted in its MDL petition that the core management witnesses responsible for these policies were located in California. The Court must conclude disputed issues of material fact exist whether California law can be applied to all members of the Class.

### 2. There is a Presumption California Law Applies to All Class Members Absent a Showing to the Contrary.

In California, "generally speaking the forum will apply its own rule of decision unless a

1  party litigant timely invokes the law of a foreign state." *Washington Mut. Bank, F.A. v. Superior*
2  *Court*, 24 Cal.4th 906, 919 (2001). If it does (and as stated above, Countrywide has failed to
3  timely do so in four years of litigation), the court will apply the "governmental interest test." In
4  discussing the governmental interest test the California court held:

> Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be "more impaired" if its law were not applied.

8  *Id.* at 920, 921. Furthermore, under *Washington Mutual*, Countrywide bears the burden of
9  establishing "that the latter rule of decision will further the interest of the foreign state and
10 therefore that it is an appropriate one for the forum to apply to the case before it." *Id.* at 919. It
11 must also show South Carolina (or any other state) has an interest in applying its similar law in
12 denying the Sizemores (or other Class members) full recovery, since even if the laws are
13 materially different, "there is still no problem in choosing the applicable rule of law where only
14 one of the states has an interest in having its law applied." *Id.* at 920; *Zinser v. Accuflex*
15 *Research*, 253 F.3d 1180, 1187 (9th Cir. 2002). This burden is "substantial" when a defendant is
16 located in California and the alleged misconduct occurred in or emanated from California. *In re*
17 *Activision Sec. Litig.*, 621 F.Supp. 415, 430 (N.D. Cal. 1985). Countrywide does not shoulder its
18 burden to justify its claim the UCL cannot be applied to all members of the Class.

19     In *Diamond Multimedia Systems, Inc. v. Sup.Ct.*, 19 Cal.4th 1036 (1999), defendants
20 made fraudulent statements and omissions in California that induced non-Californians to make
21 out-of-state securities purchases. The issue in *Diamond* was whether non-Californians who
22 purchased such securities outside California could recover under Corporations Code §25500.
23 The Court construed the statutory scheme as permitting recovery by non-California residents. *Id.*
24 at 1059, n. 20. *Diamond* concluded that cases like the 1916 decision *North Alaska Salmon Co. v.*
25 *Pillsbury*, 174 Cal. 1 (1916), relied upon by Countrywide, were distinguishable because "unlike
26 the injury in [*North Alaska*], the conduct which gives rise to liability under section 25400 occurs
27 in California." *Diamond, supra*, at 1059.
28 / / /

Federal courts, applying this authority, have consistently applied California law to non-California residents where the company was based in California and the wrongdoing in question emanated from California. Citing *Shutts,* the Northern District of California recently rejected the argument that California's consumer protection statutes do not apply to non-residents whose transactions occurred outside the forum state. Because the products in question "were likely 'researched, designed, developed and tested within California,' the 'decisions regarding marketing, sales and pricing,' likely would have been made in California," and the defendant was "incorporated in California and ha[d] its principal place of business and headquarters in San Jose, California, consumers . . . would have some expectation that California law would apply . . . such that application of California law would not be arbitrary and unfair." *Wolph v. Acer Amer. Corp.,* 272 F.R.D. 477, 2011 U.S. Dist. LEXIS 35003,*18-21 (N.D. Cal. 2011).

In *In re Intel Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS 132655, *8-9 (N.D. Cal. 2010), the Court denied summary adjudication of a UCL claim asserted by a New York resident, finding "Extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California. The alleged unfair business practices that Plaintiff Wachsler seeks to enjoin originated in California, where both Intel and BAPCo are headquartered.... As such, application of California's UCL to the claims of an out-of-state resident or corporation is appropriate." *See also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008), where the court held that California law could apply to all class members when "defendant's relevant operations, including its headquarters, marketing department, warranty department, customer affairs department, and engineering department, are located in California. Plaintiffs aver that many of the alleged wrongful acts emanated from defendant's Fountain Valley offices in Orange County, California." In each of these cases, the purchase or transaction occurred, in part, in a state other than California -- the sale of securities (in *Diamond* and *Pizza Time, infra*), the purchase of products (in *Wershba, Wolph, Intel* and *Parkinson*) or the improper imposition of charges (in *Clothesrigger*). Yet California law was found to apply to the claims of non-residents.

In the cases relied upon by Countrywide (discussed *infra*) -- *Norwest, Speyer, Hitachi* and *Sprint* -- the companies were not headquartered here and/or the wrongful conduct did not

1 emanate from here. Here, the evidence is precisely the opposite. This is a critical distinction, as
2 explained in *Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365, 379 (N.D. Cal. 2010):

> In *Norwest Mortgage* the court of appeal considered that the defendant's headquarters and its principal place of business were outside California, as were the place where the nonresident members were injured and where the injury-producing conduct occurred. Id. at 227. The court concluded that extraterritorial application of the UCL to nonresident member claims would violate due process. Id. As defendants neglect to point out, however, *Norwest Mortgage* distinguished its holding from other state court decisions finding that application of California law to nationwide class claims was constitutionally permissible...
>
> Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants. *Shutts*, 472 U.S. at 821-22; *Clothesrigger*, 191 Cal App 3d at 613."

In *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986), after summarizing the defendant's substantial contacts with California to the underlying controversy, the Court concluded California had the greatest interest in the controversy:

> The Court assumes for purposes of this motion only that defendants have demonstrated that the law of other states relating to the pendent claims is significantly different from California's. The Court further accepts *arguendo* defendants' proposition that the relevant jurisdictions have an interest in having their own tort laws applied in this case. Therefore, under California's conflict of laws analysis, the Court must determine which state's interest would be more impaired if its laws were not applied. For this purpose, the Court groups the relevant jurisdictions into two categories: California and all others.
>
> The Court first notes that each of the interested jurisdictions shares the goals of deterring fraudulent conduct, protecting those wrongly accused of fraud, and providing a remedy for its residents who have been defrauded in the manner alleged here. Each jurisdiction, including California, has laws prohibiting fraud that accommodate these sometimes competing concerns. It is evident that the similarities in these laws vastly outweigh any differences. It is also apparent that each jurisdiction would rather have the injuries of its citizens litigated and compensated under another state's law than not litigated or compensated at all. ... Precluding Plaintiffs from simultaneously asserting their common law claims arising from the same facts might effectively rob them of legitimate recoveries, and would emasculate significant and well-defined state interests.

*Id.* at 20-21. Even the court in *Norwest Mortgage v. Sup. Ct.*, 72 Cal.App.4th 214, 224-25 (1999), cited by Countrywide, agreed: "The linchpin of *Diamond's* analysis is that state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct

occurring in California." Based on the facts detailed above, that is the situation present here.

### B. EVEN IF THE COURT DECIDES TO ENGAGE IN A FULL CONFLICTS ANALYSIS, CALIFORNIA LAW WOULD STILL PROPERLY BE APPLIED TO THE SIZEMORES AND OTHER NON-RESIDENTS

The *Diamond* court emphasized there was no constitutional impediment to permitting non-Californians a right of action under a domestic statute because California has a "clear and substantial interest in preventing fraudulent practices *in this state* . . . [and] a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices," and for that reason has a legitimate interest in "extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California." *Diamond*, 19 Cal.4th at 1063-64. California has an important interest in applying its law to punish and deter the alleged wrongful conduct for companies based here and whose conduct emanates from here. *Hurtado v. Superior Court*, 11 Cal.3d 574, 580-81, 86-87 (1974). Countrywide fails to show that South Carolina has a superior interest in denying its citizens a full recovery based on the UCL's broad liability provisions. *Clothesrigger*, 191 Cal.App.3d at 616 ("California's more favorable consumer protection laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery."); *Wershba*, 91 Cal.App.4th at 242 ("California's consumer protection laws are among the strongest in the country.")

It is also the law in California that if conduct emanated from here, the UCL governs such conduct. In *Stop Youth Addiction v. Lucky Stores*, the California Supreme Court recognized that the UCL was amended in 1992 to delete the "in this state" requirement so that the UCL clearly applied to out of state conduct. And Section 17500 of the UCL specifically makes it unlawful *"to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state."* (emphasis added). Thus, if a company is based in California and its representations or schemes are created in California and disseminated from here, the UCL and FAL expressly covers such conduct. This critical distinction was made by the Court in *Norwest*:

> In contrast to the claims of class members in *Clothesrigger* and *Diamond*, the only contact between the claims of Category III members and California is Norwest Mortgage's state of incorporation. *Because Norwest Mortgage's*

> *headquarters and principal place of business, the place Category III members were injured, and the place the injury-producing conduct occurred are outside California, we conclude application of the UCL to the claims of Class III members would be arbitrary and unfair and transgress due process limitations.* All decisions regarding Norwest Mortgage's FPI program were made by Norwest Mortgage employees at its headquarters in Iowa or at its other principal facility in Minneapolis, Minnesota. Until August 1995, Norwest Mortgage performed various tasks relating to FPI from its loan servicing centers in North Carolina, Michigan, Maryland, Illinois, Arizona and Ohio. Since August 1995 most of those functions have been "outsourced" to ASIC's hazard insurance processing center in Ohio; the remaining functions are performed by Norwest Mortgage at its Iowa facility.

72 Cal.App.4th at 227. Here all relevant contacts are either with or emanate from California.

Not a single case cited by Countrywide analyzing this conflicts issue involved a company based in California where the core decisions at issue were made in California and the marketing and advertising emanated from here. In *In re HitachiTV Optical Block Cases,* 2011 U.S. Dist. LEXIS 135, *27 (S.D. Cal 2011)), the primary conduct at issue took place outside of California: "Plaintiffs also allege that the products were designed in California, but again the evidence reflects that the products were primarily developed and designed in Japan. Finally, the products at issue here were manufactured entirely in Mexico, not California." In *UCAN v. Sprint,* 259 F.R.D. 484, 487 (S.D. Cal. 2008), none of the conduct at issue (the erroneous charging of fees) was found to have emanated from California, and Sprint was based in Kansas. And in *Speyer v. Avis Rent-a-Car,* 415 F.Supp.2d 1090, 1099 (S.D. Cal. 2005), the question was the impact of conduct occurring out-of-state that had an effect in California -- the opposite of the question presented here. *Id.* ("Accordingly, read together, *Norwest* and *Yu* stand for the proposition that the UCL applies to wrongful conduct that occurs out-of-state but results in injury in California, regardless of the injured party's citizenship.").

Countrywide also relies upon *Sullivan v. Oracle Corp.,* 547 F.3d 1177, 1187 (9th Cir. 2008), where the Ninth Circuit, citing *Norwest,* held "that § 17200 does not apply to the claims of nonresidents of California who allege violations of the FLSA outside California." However, in *Sullivan* the conduct in question (payment of wages) was entirely local, and the question was the application of the UCL based solely on the violation of a federal claim -- not the case here.

Countrywide's motion highlights that disputed facts exist because California is where the

wrongful scheme and conduct occurred and emanated from. Based on Countrywide's substantial in-state conduct, it does not meet its burden to show otherwise. The Court must deny this motion.

### V. THIS MOTION SHOULD BE DENIED OR CONTINUED TO PERMIT DISCOVERY ON THE ISSUES RAISED BY COUNTRYWIDE IN THE MOTION

Countrywide asks this Court to resolve merits issues first and then argue that the merits determination affects the Court's class certification decision. This is precisely the reverse of the proper procedure, as the merits are not to be determined on class certification. The Court should reject this improper ploy, particularly as Countrywide demanded that class certification discovery should be completed first, and any merits discovery into the issues raised by this motion be deferred until after class certification. While Plaintiffs believe the above information adduced so far demonstrates why summary adjudication must be denied, at a minimum, this motion raises numerous factual issues that have not been fully explored in discovery.

Discovery focusing on Countrywide's California connections has thus been deferred because, up until a few weeks ago, Countrywide had never raised that as an issue in this litigation and because it was not considered pertinent to class certification. In terms of what discovery is relevant and yet to be completed, this is shown most starkly by the Declarations from 17 individuals proffered by Countrywide in opposing class certification. These are persons whom it did not even identify as relevant witnesses in its Rule 26(a) initial disclosures for over a year, even after it had represented all relevant information had been produced as part of the class certification inquiry, and only did so *on the day they filed their opposition*. When Plaintiffs attempted to take the deposition of one of these newly identified witnesses who submitted a Declaration, ████████████████████████████████████████████████ ████████████████████████████ Under Fed. R. Civ. P. Rule 56(d), the Court should deny or continue this motion until after discovery on Countrywide's California connections is completed, as supported by the facts set forth in the ART Dec. at ¶ 11.

DATED: June 24, 2011

By: /s/ Donna Siegel Moffa
**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Joseph H. Meltzer

By: /s/ Joe R. Whatley, Jr.
**WHATLEY DRAKE & KALLAS LLC**
Joe R. Whatley, Jr.
jwhatley@wdklaw.com

| | |
|---|---|
| jmeltzer@btkmc.com<br>Edward W. Ciolko<br>eciolko@btkmc.com<br>Donna Siegel Moffa<br>dmoffa@btkmc.com<br>Amanda R. Trask<br>atrask@btkmc.com<br>Joseph A. Weeden<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056 | Edith M. Kallas<br>ekallas@wdklaw.com<br>Ilze C. Thielmann<br>ithielmann@wdklaw.com<br>1540 Broadway, 37th Floor<br>New York, NY 10036<br>Telephone: (212) 447-7070<br>Facsimile: (212) 447-7077 |

*Co-Lead Interim Class Counsel*

| | |
|---|---|
| EYSTER KEY TUBB ROTH<br>MIDDLETON & ADAMS, LLP<br>Nicholas B. Roth<br>nbroth@eysterkey.com<br>P.O. Box 1607<br>Decatur, AL 35602<br>Telephone: (256) 353-6761<br>Facsimile: (256) 353-6767 | Strom Law Firm, L.L.C.<br>J. Preston "Pete" Strom, Jr.<br>petestrom@stromlaw.com<br>Mario A. Pacella<br>mpacella@stromlaw.com<br>2110 N. Beltline Boulevard, Suite A<br>Columbia, SC 29204<br>Telephone: (803) 252-4800<br>Facsimile: (803) 252-4801 |

FRANKLIN GRAY & WHITE
Mark K. Gray
mgray@franklingrayandwhite.com
Matthew L. White
mwhite@franklingrayandwhite.com
505 W. Ormsby Avenue
Louisville, KY 40203
Telephone: (502) 637-6000
Facsimile: (502) 637-1413

*Plaintiffs' Steering Committee*

The Consumer Law Group
Alan M. Mansfield
alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
Telephone: (619) 308-5034
Facsimile: (888) 341-5048

*Plaintiffs' Liaison Counsel*