# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COUNTRYWIDE FINANCIAL CORP. MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | CASE NO. 08md1988 DMS (WMC)<br>CASE NO. 08cv1888 DMS (WMC)<br>CASE NO. 08cv1957 DMS (WMC)<br>CASE NO. 08cv1972 DMS (WMC) |
| THIS DOCUMENT RELATES TO:<br><br>*White c. Countrywide Financial Corp.*, No. 08cv1972 DMS (WMC)<br><br>*Leyvas v. Bank of America Corp.*, No. 08cv1888 DMS (WMC)<br><br>*Jackson v. Countrywide Financial Corp.*, No. 08cv1957 DMS (WMC) | **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Docket No. 380]** |

This matter comes before the Court on Defendants' motion for partial summary judgment. Plaintiffs filed an opposition to the motion, and Defendants filed a reply. Having carefully considered the pleadings and arguments of counsel, the Court now denies the motion.

**I.**

**BACKGROUND**

This class action case is part of a multi-district litigation concerning individuals and several business entities involved in residential mortgage lending across the country. Plaintiffs filed separate class action complaints in other courts, and those complaints were transferred to this Court pursuant to an order from the Judicial Panel on Multidistrict Litigation. After transfer, several Plaintiffs joined

together and filed a Consolidated Class Action Complaint ("CAC") in which they alleged Defendants had engaged in a scheme to steer borrowers into subprime mortgages, which were then sold as investments on the secondary mortgage market. (CAC at 1-2.) Plaintiffs alleged Defendants pushed borrowers into subprime loans irrespective of their ability to repay the loans or their suitability for other types of loans. (*Id.*) According to Plaintiffs, Defendants executed this scheme through fraudulent means, including:

- incentivizing employees and brokers to place borrowers into subprime loans, (*id.* at 2-3),

- training and instructing employees to place borrowers into subprime loans without explaining the terms or disclosing the risks, (*id.*),

- "making false representations to borrowers, as set forth in standardized sales scripts, that they were offering the best loans available to the borrowers." (*id.* at 4),

- using "an automated, computerized underwriting program that was designed to maximize the number of subprime loans[,]" (*id.* at 6),

- failing to adequately disclose future interest rate increases, (*id.* at 7),

- failing to disclose the risk of negative amortization, (*id.*),

- misrepresenting the borrowers' ability to refinance, (*id.* at 11-12), and

- failing to disclose the overall scheme.

These allegations served as the factual basis for the claims alleged in the CAC, including: (1) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d), (3) aiding and abetting a violation of RICO, 18 U.S.C. § 2, (4) violation of California Business and Professions Code § 17200 ("the UCL"), (5) violation of California Business and Professions Code § 17500 ("the FAL"), and (6) unjust enrichment.

Defendants moved to dismiss these claims, which the Court granted in part and denied in part. Plaintiffs thereafter filed a First Amended Consolidated Class Action Complaint ("FACAC") in which they realleged the claims in the CAC except for the claim of aiding and abetting the RICO violation. Defendants moved for partial dismissal and to strike certain of those claims, which the Court granted in part and denied in part. Since that time, the parties have been engaged in extensive discovery and preparing for the motion for class certification.

In the motion for class certification, Plaintiffs seek certification of a class of consumers who obtained Pay Option Arm ("POA") loans and Subprime loans. Plaintiffs submit that Francis G. and Rebecca G. Sizemore should be appointed as representatives of the POA Sub-Class. Defendants oppose the motion for class certification in its entirety, and also move for summary judgment on the Sizemores UCL claims in particular.

The Sizemores are residents of South Carolina. (Pls.' Resp. to Defs.' Separate Statement of Undisputed Material Facts, ¶¶4, 6.) In May 2006, they obtained a residential mortgage loan from Countrywide Home Loans, Inc. ("CHL") secured by property located in South Carolina. (*Id.*, ¶¶1, 3; Decl. of David Jones in Supp. of Mot., Ex. A.) At the time of the Sizemores' loan, CHL was incorporated in New York and was headquartered and had its principal place of business in California. (*Id.*, ¶18; Defs.' Resp. to Pls.' Counterstatements of Undisputed Material Facts ¶8.) The Sizemores' loan closed on May 19, 2006, in South Carolina. (Pls.' Resp. to Defs.' Separate Statement of Undisputed Material Facts, ¶¶2-3.)

## II.

## DISCUSSION

Defendants move for summary judgment on the Sizemores' UCL claims. Defendants contend (1) these statutes do not protect non-California residents from conduct occurring outside California, (2) application of these statutes to non-California residents would violate due process and (3) California's choice of law principles require application of South Carolina law to the Sizemores' claims.

**A.   Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome

/ / /

1 of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v.*
2 *Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

3 The burden then shifts to the opposing party to show that summary judgment is not
4 appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all
5 justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255
6 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory
7 allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific
8 facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's*
9 *Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require
10 plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than
11 a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec.*
12 *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

13 **B.     Extraterritorial Application of the UCL**

14 As mentioned above, Defendants' first argument in support of their request for summary
15 judgment on the Sizemores' UCL claims is that the UCL does not protect non-residents from conduct
16 occurring outside California. Generally, Defendants' legal argument is correct. *See Sullivan v. Oracle*
17 *Corp.*, 51 Cal. 4th 1191, 1207 (2011) (finding "presumption against extraterritorial application" applies
18 to UCL). The problem with Defendants' argument, however, is they have not shown the conduct at
19 issue in this case occurred outside California. Defendants focus on conduct specific to the Sizemores'
20 loan, but do not address Plaintiffs' broader allegations concerning Defendants' alleged scheme "to
21 steer borrowers into subprime mortgages and loans irrespective of whether (i) the borrower would
22 have qualified for a 'prime loan' or (ii) the borrower was unable to meet the financial terms of the
23 subprime mortgage."   (FAC ¶ 2.)  Defendants also fail to address Plaintiffs' allegations that
24 Defendants used the mails and wires in furtherance of this scheme by sending and receiving
25 "promotional materials, applications, agreements, manuals, correspondence, progress reports, [and]
26 loan application disclosures." (*Id.* ¶¶ 212-14.) In sum, Defendants have failed to show there is an
27 absence of a genuine issue of material fact that all of the conduct at issue in this case occurred outside
28 California.

- 4 -

/ / /

Accordingly, this argument does not entitle Defendants to summary judgment on the Sizemores' UCL claims.

## C. Constitutional Application of the UCL

Defendants' second argument in support of their request for summary judgment is that application of the UCL to the Sizemores would violate due process. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court resolved the issue of whether application of a forum state's substantive law to the claims of a nationwide class violated due process. The class in *Shutts* consisted of approximately 33,000 members that possessed royalty rights in land leased to the defendant for the production or purchase of natural gas. *Id.* at 799, 801. The land at issue was located in eleven different States, and the class members "reside[d] in all 50 States, the District of Columbia, and several foreign countries." *Id.* The plaintiffs alleged the defendant had withheld interest on certain royalty payments, and brought a class action in Kansas state court to recover those amounts. *Id.* Over defendant's objection, the state court certified the class, and the case proceeded to trial before the court. *Id.* at 801. Applying Kansas law, the court found defendant liable for interest on the suspended royalties to all class members. *Id.* The defendant appealed the judgment to the Supreme Court of Kansas, arguing that "Kansas courts could not apply Kansas law to every claim in the dispute[,]" but the court rejected that argument. *Id.* at 802-03. It found "that generally the law of the forum controlled all claims unless 'compelling reasons' existed to apply a different law. The court found no compelling reasons, and noted that '[t]he plaintiff class members have indicated their desire to have this action determined under the laws of Kansas.'" *Id.* at 803. The Supreme Court granted certiorari to decide whether application of Kansas substantive law to the claims of all class members "violated the constitutional limitations on choice of law mandated by the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1." *Id.* at 816.

In resolving this issue, the Court first "determine[d] whether Kansas law conflicts in any material way with any other law which could apply." *Id.* After finding such conflicts, the Court then considered whether Kansas had "a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to

ensure that the choice of Kansas law is not arbitrary or unfair." *Id.* at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 301, 312-13 (1981)). The Court found such contacts did not exist, and therefore held "that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

### 1. Is There A Material Conflict Between California Law and the Laws of the Other States?

Following the analysis in *Shutts*, Defendants argue the UCL conflicts with the laws of other states, and in particular, the law of South Carolina. This Court had the opportunity to consider this issue in a recent case. *See In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS (NLS), 2011 WL 9403 (S.D. Cal. Jan. 3, 2011). In that case, the Court found there were material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states. *Id.* at *6. Thus, the Court turns to the second prong of the *Shutts* test.

### 2. Does California Have Sufficient Contacts to the Claims of Each Class Member?

The second prong of the *Shutts* test asks whether California has sufficient contacts to the claims of each class member to ensure that the choice of California law "is not arbitrary or unfair." 472 U.S. at 821-22. Here, Defendants argue there are insufficient contacts between the Sizemores' claims and California, but again, Defendants' argument is focused on conduct specific to the Sizemores' loan as opposed to conduct related to the alleged scheme. On that conduct, Defendants have failed to show there are insufficient contacts with the State of California, or that there is an absence of a genuine issue of material fact concerning those contacts. Accordingly, Defendants' due process argument does not warrant summary judgment on the Sizemores' UCL claims.

### D. **California Choice of Law Principles**

Defendants' final argument in support of their request for summary judgment is that California choice of law principles warrant application of South Carolina law to the Sizemores' claims. California courts apply:

> the so-called governmental interest analysis in resolving choice-of-law issues. In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine

whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006) (citations omitted).

Here, Defendants argue there is a conflict between California and South Carolina law, and the Court agrees. Defendants also argue California "can have no real interest" in the application of its own law to the Sizemores' claims because the Sizemores are not residents of California, their loan transaction was consummated in South Carolina, and their loan is secured by real property located in South Carolina. (Mem. of P. & A. in Supp. of Mot. at 15.) However, Defendants' argument ignores that the Sizemores' lender, CHL, was headquartered and had its principal place of business in California. Defendants' argument also ignores Plaintiffs' allegations that Defendants were engaged in a overarching scheme that was developed and implemented from this State. Under these circumstances, the Court cannot agree that California has no interest in applying its own law to the Sizemores' claims. *See Havlicek v. Coast-to-Coast Analytical Services, Inc.*, 39 Cal. App. 4th 1844, 1852-53 (1995) (applying California law where defendant's principal place of business in California, documents at issue in California, defendant conducted business in California, defendant employed California residents, and 40 percent of stock and two board seats held by California residents). Accordingly, Defendants are not entitled to summary judgment on the Sizemores' claims on the basis of California choice-of-law principles.

## III.

## CONCLUSION

For these reasons, Defendants' motion for partial summary judgment is denied.

**IT IS SO ORDERED.**

DATED: October 11, 2011

_____
HON. DANA M. SABRAW
United States District Judge